### Betty KOHLER, Plaintiff,

v.

Julian HIRST, City Manager for the City of Norfolk, Dean Gross, Director of Norfolk Public Library System, The Members of the Board of Directors of the Norfolk Public Library System, William B. Copeland, Lewis W. Webb, Jr., Webster M. Chandler, Jr., Ira Gould, Mrs. Emmanuel Michaels, Herbert A. Marshall, Charles E. Jenkins, II, Mrs. Robert E. Washington, Mrs. Walter E. Hoffman, Defendants.

Civ. A. No. 78–243–N.

United States District Court, E. D. Virginia, Norfolk Division.

Oct. 5, 1978.

**414**

Sacks & Sacks, Norfolk, Va., for plaintiff.

Harold P. Juren, City Atty., Norfolk, Va., for defendants.

## OPINION AND ORDER

CLARKE, District Judge.

This litigation stems from the termination of plaintiff's employment as assistant director of the Norfolk Public Library System on March 15, 1978. Plaintiff instituted action on May 9, 1978, pursuant to 42 U.S.C. § 1983. Jurisdiction was based on 28 U.S.C. §§ 1331, 1343(3), and 1343(4). Defendants have moved to dismiss the complaints pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

In her complaint, plaintiff alleges that she was hired on February 5, 1973, as assist-ant director of the Norfolk Public Library System, an administrative department of the City of Norfolk, Virginia. At the time of her hiring, she alleges, this position was included within the classified service under the Civil Service Commission of the City of Norfolk. "As such," her complaint continues, "it was agreed and she was entitled to never be discharged" from her position except for cause and with reasonable and proper notice, the opportunity for a fair and impartial hearing, and the right to be advised of the specific reasons for her discharge. On March 15, 1978, defendant Dean Gross, director of the Norfolk Public Library System, and defendant Julian Hirst, City Manager of the City of Norfolk, discharged plaintiff from her employment because "it was in the best interests of the library." At no time has she been given notice, an opportunity for a hearing, or a statement of reasons.

In her complaint, plaintiff named as defendants Gross, Hirst, and the nine members of the Board of the Norfolk Library System. Her first count alleged that she had acquired a property interest by virtue of her employment and her reasonable expectation of continued employment until age sixty-five, and she was therefore deprived of property without due process of law in violation of the Fourteenth Amendment. The second count contends that the termination of her employment was arbitrary and capricious, in contravention of the due process requirements of the Fourteenth Amendment. Finally, plaintiff argues that defendants dismissed her because she had exercised her First Amendment right of freedom of speech. As relief, plaintiff seeks damages, attorney's fees, and injunctive relief.

Defendants have raised five points in moving to dismiss: (1) under state law plaintiff had no right to a statement of reasons or to a hearing in connection with her dismissal; (2) plaintiff's allegation that the defendants engaged in "arbitrary and capricious" action fails to state a claim cognizable by the federal courts; (3) the First Amendment count fails to state a claim

upon which relief can be granted; (4) the complaint fails to allege conduct by the defendant board members that would subject them to liability under 42 U.S.C. § 1983; (5) the defendant board members are not "persons" within the meaning of 42 U.S.C. § 1983. The Court will discuss each of these arguments in turn.

Reading the complaint most favorably to the plaintiff, the Court believes that plaintiff Kohler bases her protected "property right" on two sources. On the one hand, she appears to be arguing that the local charter provision guaranteeing her, as a member of the classified service, continued employment absent "cause" for discharge conferred on her a legitimate claim of entitlement which is a constitutionally protected property interest.[1] Alternatively, she contends that when she was hired she made a contract of employment with the City, which agreed that she would retain the rights of a classified employee irrespective of subsequent legislative action. This agreement allegedly conferred contract rights, and, consequently, property rights.

■ Neither of plaintiff's arguments can be treated lightly. Perhaps the charter did confer a property right; in *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), a majority of the United States Supreme Court ruled that a federal statute guaranteeing a nonprobationary federal civil servant continued employment absent "cause" for discharge conferred a property interest which the Fifth Amendment protects from deprivation without due process of law. And the Court has ruled that a constitutionally protected property interest can be created either by ordinance *or* by a

contract between the state and the individual. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann,* 408 U.S. 593, 599–603, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The contract may be either express or implied. For example, continuous employment over a long period of time can amount to the equivalent of tenure, a protected property right. *Johnson v. Fraley,* 470 F.2d 179, 181 (4th Cir. 1972).

Whether a claimant has a sufficient expectation of continued employment to constitute a protected property interest, however, must be decided by reference to state law. *E. g., Bishop v. Wood, supra; Goss v. Lopez,* 419 U.S. 565, 572–73, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Clearly, since plaintiff was hired in Virginia by an incorporated city of Virginia, the law of Virginia governs here.

After a thorough study of Virginia law, the Court has decided that exercising jurisdiction in this case would be inadvisable. Abstention is appropriate here for three reasons. First, state law is extremely unsettled as to the issues in this case. Second, determination by state courts of several of the state law issues raised might make adjudication of the federal constitutional issues unnecessary. Third, recent decisions indicate that abstention is especially appropriate when the dispute centers around the employer-employee relationship between a state or locality and a public employee.

### The Uncertainty of Virginia Law

■ Abstention from the exercise of jurisdiction is the exception, not the rule. *Col-*

---

1. Section 112 of the City charter provides in pertinent part:

   The civil service commission shall prescribe, amend and enforce rules for the classified service, which shall have the force and effect of law . . .

   Rules shall provide:

   (7) For a period of probation not to exceed twelve months in the case of members of the divisions of fire and police, and not to exceed six months in the case of other officers and employees in the classified service, before appointment or promotion is made complete, during which periods a probationer may be discharged or reduced at the will of the city manager. After such period of promotion, no officer or employee in the classified service shall be reduced in rank, removed or discharged except for cause and upon written charges, and after an opportunity to be heard in his own defense. Such charges shall be investigated and disposed of by the city manager, whose decision shall be final.

orado River Water Conservation District v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); Zwickler v. Kota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). But "[a]mong the cases that call most insistently for abstention are those in which the federal constitutional challenge turns on a state statute, the meaning of which is unclear under state law." Harris County Commissioners Court v. Moore, 420 U.S. 77, 84, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975). Here, state law is too uncertain for the Court to judge either the worth of plaintiff's claim of a property right or the merits of the various points asserted by defendants.

■ Unfortunately, Virginia law offers little guidance concerning protected property rights. Virginia makes no distinction between "rights" and "privileges" in determining whether a particular liberty or property interest is protected. Klimko v. Virginia Employment Commission, 216 Va. 750, 222 S.E.2d 559, cert. denied, 429 U.S. 849, 97 S.Ct. 136, 50 L.Ed.2d 122 (1976). Whether a benefit conferred by the state is a property right is not ascertained easily, however. Minority is not a vested property right, nor is a license to operate an automobile. Mack v. Mack, 217 Va. 534, 229 S.E.2d 895 (1976); Prichard v. Battle, 178 Va. 455, 17 S.E.2d 393 (1941). Yet a wife's otherwise unprotected right to alimony becomes a property interest when it arises from a property settlement agreement confirmed in a final divorce decree and judicially sanctioned. Shoosmith v. Scott, 217 Va. 290, 227 S.E.2d 729 (1976).

■ The state supreme court, however, has rarely discussed whether classified civil service status per se, or a contract conferring the equivalent of such status, constitutes a protected property right. Appointment to elective office confers no property right on the office-holder. Walker v. Massie, 202 Va. 886, 121 S.E.2d 448 (1961). Furthermore, city charters and ordinances that confer benefits on individual citizens are not "contracts" that the legislature cannot alter. See City of Portsmouth v. Virginia Railway & Power Co., 141 Va. 44, 126 S.E. 366 (1925). But in Klimko v. Virginia Employment Commission, supra, the court declared:

> Procedural due process has been extended . . . to the right to government employment, Connell v. Higginbotham, 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971); Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); but compare Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974);

.      .      .      .      .

Whether the court meant that government employees as government employees have a constitutionally protected property right which can be removed only by due process is uncertain. The first three cases cited— Connell, Slochower, and Wieman —held only that government employees could not be discharged arbitrarily, without a hearing, merely because they complied or failed to comply with certain statutes. In Arnett, the last case cited, the United States Supreme Court held that although federal law permitted civil servants to be discharged only "for cause," due process did not require a pretermination hearing. Yet a majority of the Justices also held that the statutory guarantee of continued employment absent "cause" for discharge did in fact constitute a property right protected to some extent by the due process clause of the Fifth Amendment.[2]

---

**2.** Three Justices contended that a full evidentiary hearing must be afforded to a tenured government employee before removal. See 416 U.S. at 206–27, 94 S.Ct. 1633 (Marshall, Douglas, and Brennan, JJ., dissenting). Three others concluded that only a post-removal evidentiary hearing is required, because before dismissal the affected employee is given 30 days' advance written notice of the reasons for the proposed discharge, the materials on which the notice is based, and the right to respond to the charges. See id. at 164–71, 94 S.Ct. 1633 (Powell and Blackmun, JJ., concurring in part and concurring in the result in part) and 171–203, 94 S.Ct. 1633 (White, J., concurring in part and dissenting in part).

Perhaps the Supreme Court of Virginia will similarly construe the civil service provision of the Norfolk city charter, see note 1 *supra,* and rule that plaintiff had a property right by virtue of her protection from discharge absent "cause." Since *Arnett* was a case involving only federal law, however, it does not bind state courts. In view of the paucity of relevant state law and the uncertainty resulting therefrom, this Court believes that a state court should have the first opportunity to rule on this issue.

Difficulties in determining state law arise not only from the claim of the plaintiff but also from an important issue raised by defendants. Understandably, defendants deny that whatever classified status the plaintiff had conferred a property right on her. But they argue alternatively that no right could stem from the contract which plaintiff asserts she made with the City of Norfolk, because such a contract (if made) was illegal under the Norfolk city charter. They concede that a municipality has the power to make express and implied contracts.[3] Nevertheless, they contend, an express contract can be made only with corporate action by the council, and both express and implied[4] contracts must conform to statutory and charter provisions. The oral contract alleged by plaintiff, they say, did not comply with the following provisions of the city charter: Section 14, which allows the City Council to act only by written ordinances or resolutions; Section 50, which allows the City Manager to make and execute contracts except as otherwise provided; Section 53, which orders the City Attorney to prepare all contracts in writing; and Section 72, which requires that the director of finance certify to the City Council that the money needed for a proposed contract is in the city treasury before the Council may enter into the contract.

At first glance, these charter provisions would clearly make the alleged oral contract illegal, since they require that contracts be written and approved by the City Council. Plaintiff, of course, has not represented that either requirement was met here. But the charter is not as clear as defendants might wish. Section 4 empowers the City Council to fix the salaries, prescribe the duties, and define the powers of city employees, but Section 50 gives the City Manager the authority to appoint all city employees, both classified and unclassified. In addition, Section 9 provides in pertinent part:

> Neither the council, nor any of its members, shall dictate the appointment of any person to office or employment by the city manager, *or in any manner interfere with the city manager, or prevent him from exercising his own judgment in the appointment of officers or employees in the administrative service.* (emphasis added)

It is difficult to reconcile this strict prohibition with those sections which, according to defendants, require council approval of all contracts. If the council cannot interfere with the hiring of city employees, it seemingly must lack the ultimate power of approval over a contract of employment like that alleged here. This power must reside with the City Manager, whom the charter empowers in Section 50 to hire city employees and to make contracts. It might be contended, however, that Section 50's distinction between the hiring power (Section 50(b)) and the contracting power (Section 50(g)) indicates a legislative intention to prohibit contracts of employment. Furthermore, the Court is reluctant to reconcile the seemingly conflicting provisions of the charter without an ample body of relevant state law. The statutory law and case law

---

**3.** See, e. g., *Leonard v. Town of Waynesboro,* 169 Va. 376, 193 S.E. 503 (1937).

**4.** Defendants' reliance on implied contract cases is somewhat puzzling, since plaintiff seems to be asserting only that she made an *express oral* contract with the city. Nevertheless, it is possible to discern an implied contract—a contract by conduct—from plaintiff's complaint and briefs. For example, she argues that she was treated as a classified employee even after the 1977 amendment to the city charter (discussed *infra* ) allegedly removed her job from the classified status. Consequently, the implied contract cases have some relevance here.

offer virtually no guidance. Consequently, interpretation of the charter by state courts would be the preferable course.

### Resolution on State Grounds

■ Difficulty in interpreting state law is not alone a proper reason for abstention. *AFA Distributing Co., Inc. v. Pearl Brewing Co.,* 470 F.2d 1210, 1212 (4th Cir. 1973). Abstention is particularly not favored in civil rights actions brought under 42 U.S.C. § 1983. *Mayor of Philadelphia v. Educational Equality League,* 415 U.S. 605, 628, 94 S.Ct. 1322, 39 L.Ed.2d 630 (1974); *Jordan v. Hutcheson,* 323 F.2d 597, 605 (4th Cir. 1963). Nevertheless, courts have found abstention proper when interpretation of uncertain state law by a state tribunal might render unnecessary or substantially modify the federal constitutional question. *E. g., Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 84, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); *Harman v. Forssenius,* 380 U.S. 528, 534–35, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); *Baggett v. Bullitt,* 377 U.S. 360, 376–77, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).[5] There are several ways by which this case might be resolved through application of state law without adjudication of the constitutional issue.

Plaintiff contends that she acquired a property right either through her status as a classified civil servant or through the contract that she allegedly made with the city. Defendants reply that whatever right, if any, plaintiff acquired at the time of her hiring was repealed on March 1, 1977, when the Virginia General Assembly amended the city charter so as to remove plaintiff's position—assistant director of the library system—from the classified service.[6] If the Virginia courts found that plaintiff did acquire a right, however, Virginia statutory law would prevent its modification or repeal by the legislature. *Va.Code Ann.* § 1–16 (1973 Repl.Vol.) provides in pertinent part:

> No new law shall be construed to repeal a former law, as to . . . any right accrued, or claim arising under the former law, or in any way whatever to affect . . . any right accrued, or claim arising before the new law takes effect; . . .[7]

■ Plaintiff may prevail on the basis of another state law doctrine. In Virginia, new laws (except as to matters of remedy) are usually presumed to be prospective and not retroactive in their operation. *Paul v. Paul,* 214 Va. 651, 203 S.E.2d 123 (1974). In other words, even if the plaintiff had no protected property right, Virginia law presumes that the 1977 amendment banned only *future* assistant department heads, not incumbents such as plaintiff Kohler, from the classified service. If that presumption proves correct, plaintiff was still a classified civil servant at the time of her firing. Her termination would then have been contrary to the required statutory procedures and therefore illegal.[8]

---

5. This situation justifies abstention in cases brought under 42 U.S.C. § 1983. *See, e. g., Carey v. Sugar,* 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976); *Boehning v. Indiana State Employees' Ass'n, Inc.,* 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148 (1975); *Harrison v. NAACP,* 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).

6. Section 114 of the city charter, as amended in 1977, provides in pertinent part:
   § 114. Officers exempted from classified services.—Officers who are elected by the people or who are elected or confirmed by the council, pursuant to this charter, members of the school board, . . . heads of the administrative departments of the city,

assistant heads of administrative departments except for the departments of fire and police, . . . shall not be included in such classified service; . . . (emphasis added)

7. Conceivably a Virginia court might find that the 1977 amendment superseded this statutory provision. Even so, the 1977 amendment may be inapplicable to an individual employment contract between a city and an employee. In that event, plaintiff would recover as long as the contract was not illegal under the city charter.

8. Admittedly *Paul* stated that the presumption does not end the court's inquiry; the intent of the parties is the decisive factor. In this case,

That the Virginia courts may rule for plaintiff on the basis of one or more of these theories is not mere wishful speculation. The Supreme Court of Virginia indicated in *Klimko v. Virginia Employment Commission* tnat government employees may have a protected property right, and the presumption against retroactivity is unambiguously stated both in statutes and in case law. If she prevails, plaintiff's firing will be declared illegal and she will be entitled to the relief she now seeks.

### Recent Cases

■ Recent decisions by the United States Supreme Court and courts of appeals show that abstention is particularly appropriate in disputes between the state as employer and a government employee. A state must have the ability to structure employer-employee relationships in the furnishing of public services. *National League of Cities v. Usery,* 426 U.S. 833, 851, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). Included within this "structuring" are the hirings and firings of employees who provide the services. Federal courts, therefore, should endeavor to avoid becoming enmeshed in disputes between state or local government employees and their employer.

In *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975), five officeholders threatened with removal by redistricting prior to the expiration of their elected terms sued in federal court in an effort to block implementation of the redistricting plan. They argued that the plan, while made pursuant to a statute, violated the due process and equal protection clauses of the Fourteenth Amendment. The Supreme Court ruled that the district court should have abstained because of the possibility that the state constitution guaranteed tenure to the plaintiffs until the completion of their elected terms.

The Eighth Circuit ruled that abstention was appropriate in *Easter v. Olson,* 552 F.2d 252 (8th Cir. 1977). A teacher sued under 42 U.S.C. § 1983 after her teaching contract was terminated without a hearing. She alleged that a state statute, which required that a teacher be given a hearing before termination of her contract, granted her a substantive property interest in continued employment sufficient to trigger the procedural protections of the Fourteenth Amendment. Defendant, however, contended that a subsequent change in the statute allowed termination of plaintiff without a hearing and without just cause. The court ruled that abstention from the constitutional issue was required because the constitutional claim would be mooted if the state courts ruled the amendments retroactive. *Id.* at 254.

A career civil service employee who brought a § 1983 action was forced to resort to state courts in *Diaz Gonzalez v. Colon Gonzalez,* 536 F.2d 453 (1st Cir. 1976). The plaintiff contended that he was summarily transferred from a competitive to a noncompetitive civil service position, thus losing his entitlement to a hearing before termination, and then dismissed. Defendants admitted that the state director of personnel had classified the position as competitive, but they argued that his action was illegal under state law. The First Circuit ruled that the district court should have abstained because the relevant statute was ambiguous and the readings of that statute by both parties were not unreasonable. The court added:

> While we realize that our directing abstention in this case will require vacation of both the district court's own judgment and its assessment of attorneys' fees and the judgment which the court entered on the jury verdict, we believe that our system of federalism requires no less, see *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed. 669 (1971). As the Supreme Court has very recently stated: "Where . . . the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the

---

intent would be a highly important issue if the plaintiff were alleging only a contract theory. However, intent is largely irrelevant as to her

continuing status as a classified civil servant. For her classified status to end, either plaintiff had to resign or to be removed for cause.

'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 607, 46 L.Ed.2d 561, 44 U.S. L.W. 4095, 4100 (1976), quoting *Stefanelli v. Minard,* 342 U.S. 117, 120, 72 S.Ct. 118, 96 L.Ed. 138 (1951).

*Id.* at 458. The same principles apply here.

■ Accordingly, the Court abstains from exercising jurisdiction in this case. Abstention will not cause prejudicial delay to the defendant,[9] since her dismissal occurred only six months ago and she still has enough time to file an action in state court. The Court retains jurisdiction of the case pending adjudication of state court proceedings. *American Trial Lawyers Association, New Jersey Branch v. New Jersey Supreme Court,* 409 U.S. 467, 93 S.Ct. 627, 34 L.Ed.2d 651 (1973). If after resort to the state courts the plaintiff still contends that her constitutional rights are being abridged, she may return to this Court. And, should the state courts rule against plaintiff on questions of local law, she may return to this Court for adjudication of her federal contentions if she preserves her right to do so. *Id.,* citing *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 419-22, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

Because plaintiff originally chose to by-pass state court procedures, there is the possibility that she will return to this Court. Accordingly, the Court will rule on the other grounds concerning the sufficiency of her complaint as alleged by defendants.

■ Defendants argue that plaintiff's second count, that termination of her employment was "arbitrary and capricious" in violation of the Fourteenth Amendment, fails to state a claim cognizable by the federal courts. The Court cannot agree that an allegation of arbitrary and capricious termination of a government worker's employment by a state or local government does not present a proper constitutional issue before a federal court. It is true that *Bishop v. Wood,* 426 U.S. 341, 349, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), prohibited federal courts from reviewing a personnel decision by public agencies merely because the employee considered the action "incorrect" or "ill-advised." But there is a difference between a decision that is mistaken and one that is patently arbitrary and capricious— for example, one that is based upon constitutionally impermissible grounds. *See, e. g., Board of Curators of the University of Missouri v. Horowitz,* 435 U.S. 78, 91, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978); *Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 898, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); *Wieman v. Updegraff,* 344 U.S. 183, 191-92, 73 S.Ct. 215, 97 L.Ed. 216 (1952); *Johnson v. Branch,* 364 F.2d 177, 181 (1966), *cert. denied,* 385 U.S. 1003, 87 S.Ct. 706, 17 L.Ed.2d 542 (1967); *Holliman v. Martin,* 330 F.Supp. 1, 9 (W.D.Va.1971).[10] Nevertheless, plaintiff has merely stated a conclusion; she has not alleged, even briefly, how or why defendants' conduct was arbitrary and capricious. This lack of factual allegations makes the second count defective.

■ According to defendants, the third claim, which alleges that plaintiff was fired because she exercised or attempted to exercise her First Amendment rights, fails to state a claim upon which relief can be granted. The Court agrees that this count is defective. Discharge of a government employee is unconstitutional if it is in retribution for the exercise of First Amendment rights. *Perry v. Sindermann,* 408 U.S. 593, 597–98, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Hodgin v. Noland,* 435 F.2d 859, 860–61 (4th Cir. 1970), *cert. denied,* 408 U.S. 942, 92 S.Ct. 2846, 33 L.Ed.2d 766 (1972). Plaintiff's third count, however, is but an enumeration of conclusions without supporting

---

**9.** *See, e. g., Mayor of Philadelphia v. Educational Equality League,* 415 U.S. 605, 628, 94 S.Ct. 1322, 39 L.Ed.2d 630 (1974); *Griffin v. County School Board of Prince Edward County,* 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964).

**10.** This also is a state law claim cognizable by state courts. *See, e. g., County Board of Spotsylvania County v. McConnell,* 215 Va. 603, 212 S.E.2d 264 (1975); *Carter v. Thompson,* 164 Va. 312, 180 S.E. 410 (1935).

facts. Nowhere in her complaint does she describe when she exercised her free speech rights and what she said. Naked allegations that defendants interfered with free speech rights are insufficient to state a cause of action.[11]

[redacted] Defendants next argue that the complaint fails to allege direct and personal action by the defendant library board members regarding the termination of plaintiff's employment. Plaintiff alleges that the board members knew of her firing, were in a position to prevent it, but failed to do so. This type of conduct, even if true, does not subject the board members to liability under 42 U.S.C. § 1983. More direct personal action is required. *See Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Vinnedge v. Gibbs,* 550 F.2d 926 (4th Cir. 1977).[12]

[redacted] The last contention of defendants is that the members of the library board are not "persons" within the meaning of 42 U.S.C. § 1983 and therefore cannot be sued. This is incorrect. Admittedly *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), held that municipal corporations are immune from suit under the statute. In the recent case of *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), however, the Supreme Court overruled that part of *Monroe.* If municipalities are now suable, so too must be members of municipal boards and commissions. This is of little consolation to plaintiff, since she has not alleged conduct by the board members that would make them liable.

Defendants' motion to dismiss is held in abeyance. Since courts traditionally have been quite liberal in granting leave to amend complaints, however,[13] the Court grants permission to plaintiff to file an amended complaint if and when she returns to this Court after the state court proceedings. As stated *supra,* the Court abstains at this time but retains jurisdiction pending state court proceedings.

[redacted]

11. However, the two briefs which plaintiff submitted indicate that she criticized the director of the library system and the library board on certain occasions and that she was fired in retaliation for her comments. These factual allegations, if incorporated into an amended complaint, may be sufficient to state a claim. *See Perry v. Sindermann, supra.*

12. Plaintiff claims in her briefs that the board members recommended and participated in termination of her employment. Had these allegations been included in her complaint, a cause of action might have been stated. Here, however, the Court must confine its study to the complaint.

13. *See Fed.R.Civ.P.* 15(a).