Thir-Kelle Harris HOWARD, Plaintiff,

v.

TOPEKA–SHAWNEE COUNTY METRO-
POLITAN PLANNING COMMISSION,
et al., Defendants.

Civ. A. No. 80–4199.

United States District Court,
D. Kansas.

Feb. 7, 1983.

Fred W. Phelps, Jr., Phelps-Chartered, Topeka, Kan., for plaintiff.

Wilburn Dillon, Jr., Topeka, Kan., for Jim Claussen.

Donna Voth, Asst. Shawnee County Counselor, Topeka, Kan., for County of Shawnee and Dennis Taylor.

George E. Erickson, Topeka, Kan., for Dan Turner.

Edwin P. Carpenter, Topeka, Kan., for James H. Schlegel.

Wayne T. Stratton, Charles R. Hay, Arthur E. Palmer, Topeka, Kan., for Planning Com'n and City of Topeka.

## MEMORANDUM AND ORDER

O'CONNOR, Chief Judge.

Now pending before the court are the following motions: Motions for summary judgment of the defendants City of Topeka, City-County Metropolitan Planning Commission, and defendant Shawnee County; defendant Schlegel's motion for summary judgment; defendant Claussen's motion to dismiss or for summary judgment; defendant Taylor's motion to dismiss or for summary judgment; and defendant Turner's motion for summary judgment. We will discuss these in the order listed.

Plaintiff is a black female who was employed at the Topeka-Shawnee County Metropolitan Planning Commission from October 9, 1978 until June 23, 1980, when she was terminated. Plaintiff was hired originally as a Planner II and later promoted to the position of Planner III. Plaintiff alleges her employer's failure to hire or to promote her earlier to the position of Planner III was due to discriminatory practices. In addition, plaintiff alleges that three denials of pay increases, as well as denial of proper performance evaluations and the general conditions of her employment were discriminatory and in retaliation against her for filing and pursuing discrimination charges with the Kansas Commission on Civil Rights. Finally, plaintiff alleges that she was terminated during the summer of 1980 for discriminatory or retaliatory reasons. Plaintiff has named as party defendants the City of Topeka, the County of Shawnee, the Topeka-Shawnee County Metropolitan Planning Commission (hereinafter the Planning Commission), Jim Claussen (the Fi-

nance Commissioner of the City of Topeka), Dennis Taylor (the County Commissioner serving as alternate representative to the Planning Commissioner at the time of plaintiff's termination), James Schlegel (plaintiff's supervisor at the Planning Commission), and Dan Turner (City Attorney for the City of Topeka). Plaintiff claims that these defendants violated 42 U.S.C. §§ 1981, 1983, and 1985, the Civil Rights statutes. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343. In addition, jurisdiction is asserted under the Fifth and Fourteenth Amendments to the United States Constitution, pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Plaintiff has sued the individual defendants in their individual and official capacities. Plaintiff amended her complaint to allege a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

■ Summary judgment is to be rendered only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Tenth Circuit has noted that the relief contemplated by Rule 56 is "drastic, and should be applied with caution to the end that the litigants will have a trial on bona fide factual disputes. Under the rule no margin exists for disposition of the factual issues, and it does not serve as a substitute for a trial of the case nor require the parties to dispose of litigation through the use of affidavits." *Machinery Center, Inc. v. Anchor National Life Insurance Co.*, 434 F.2d 1, 6 (10th Cir.1970). In considering a motion for summary judgment, a court must view the evidence in the light most favorable to the party opposing the motion, and judgment should not be granted where different inferences can be drawn from conflicting depositions. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027, 1036 (10th Cir.1978). Summary judgment is to be sparingly granted, especially in civil rights actions.

We also note, however, that a plaintiff cannot successfully oppose a summary judgment motion by relying on the "off chance" that something will develop later to justify a trial. *Glenn v. Turner*, No. T-5375 (D.Kan., *unpublished*, 7/7/76, J. Rogers). The court of appeals has stated that:

> One purpose of summary judgment is to determine if the parties can provide some evidentiary support for their version of facts. If a party has credible evidence for its position, it must make the existence of such evidence known, because summary judgment cannot be defeated by some vague hope that something may turn up at trial.... The trial court may pierce the pleadings and determine from depositions, admissions and affidavits, if any, in the record whether material issues of fact actually exist.... It is settled that when a motion for summary judgment is supported by affidavits, the party opposing it may not rest upon the mere allegations of pleadings, but must respond with specific facts showing the existence of genuine issues for trial. *Williams v. American Airlines, Inc., et al.*, No. 78-1133 (10th Cir., unpublished, 10/19/78).

With these guidelines in mind, we now turn to discuss defendants' motions for summary judgment.

*I. Motions of Shawnee County, the City of Topeka and the Topeka-Shawnee County Metropolitan Planning Commission for Summary Judgment.*

These entity defendants contend that all of plaintiff's claims against them are based upon a theory of *respondeat superior* and therefore must be dismissed.

Plaintiff argues, first, that the case of *Rhodes v. City of Wichita*, 516 F.Supp. 501 (D.Kan.1981), is determinative of this issue; second, that there was sufficient activity on the part of these two defendants to hold each primarily liable, as each was the "employer" of plaintiff; and third, that the *respondeat superior* arguments apply, at best, only to plaintiff's claims under § 1983.

■ Plaintiff's reliance on the case of *Rhodes v. City of Wichita, supra,* is misplaced. In that case Judge Kelly of this district held that a *Bivens* -type action was available against a municipality directly under the Fourteenth Amendment and that the theory of *respondeat superior* would be applicable. As noted in the opinion itself, this holding is contrary to the eight circuit courts of appeals that have considered the issue. *Rhodes, supra,* at 502.[1] In addition, Judge Crow of this district has held to the contrary, albeit with no direct reference to *Rhodes,* in *Mobray v. Darr,* Nos. 80–1116 and 80–1278 (D.Kan., *unpublished,* 6/7/82). Although consistency within the district is always desirable, judicial integrity is not to be sacrificed when an individual judge is convinced the decision of a colleague is unsupportable. We simply do not agree with Judge Kelly that *Bivens* or its progeny in any way requires the imposition of liability upon a municipality or local governmental unit on the basis of *respondeat superior* in a *Bivens* -type action.

Our constitutional scheme places the responsibility for legislation on the Congress; consequently, federal courts have been reluctant to find causes of action arising directly from the Constitution. We agree with the Fifth Circuit in *Hearth, Inc. v. Department of Public Welfare,* 617 F.2d 381, 382–83 (5th Cir.1980), that the notable exceptions of *Bivens* and *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), were necessitated primarily by the absence of alternative remedies. In a case such as the one before us, § 1983 provides a plaintiff with a means for seeking relief against officials who violate the Constitution. We are not persuaded that because *respondeat superior* is not available to a plaintiff seeking relief under § 1983, that this constitutes an absence of alternative remedies which would justify our implying a cause of action directly under the Constitution using the *Bivens* doctrine. To hold otherwise, as in *Rhodes,* would permit a plaintiff to circumvent the restrictions imposed by Congress and the courts on a § 1983 claim against a municipality. The Supreme Court in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), made it clear that *respondeat superior* was not available to a plaintiff in a § 1983 action. *Bivens* created a remedy against federal officers acting under color of federal law, analogous to § 1983 remedies against state officials, and in no way suggested that *respondeat superior* was applicable to such actions. In fact, the Tenth Circuit subsequently held in *Kite v. Kelley,* 546 F.2d 334 (10th Cir.1976), that *respondeat superior* was not available to hold the superiors of federal agents vicariously liable in a *Bivens* -type action.

We agree with the Sixth Circuit in *Jones v. City of Memphis,* 586 F.2d 622, 625 (6th Cir.1978), that it would be "incongruous to hold that the doctrine of *respondeat superior* can be invoked against a municipal corporation in an action under 28 U.S.C. § 1331 [a *Bivens* -type action] when the doctrine has no application in an action under 42 U.S.C. § 1983." The Fifth Circuit noted in *Dean v. Gladney,* 621 F.2d 1331, 1336 (5th Cir.1980):

> Prior to *Bivens,* Congress had not created a cause of action for intentional violations of constitutional rights by federal officers, although it had created such a remedy in § 1983 against officials and employees acting 'under color of state law'.... Denying *respondeat superior* liability in an implied cause of action under the Constitution is therefore consistent with the rejection of such liability in the context of § 1983.... Although

---

**1.** *Dean v. Gladney,* 621 F.2d 1331 (5th Cir.1980), *cert. denied* 450 U.S. 983, 101 S.Ct. 1521, 67 L.Ed.2d 819 (1981); *Cale v. City of Covington,* 586 F.2d 311 (4th Cir.1978); *Jones v. City of Memphis,* 586 F.2d 622 (6th Cir.1978), *cert. denied* 440 U.S. 914, 99 S.Ct. 1230, 59 L.Ed.2d 464 (1979); *Molina v. Richardson,* 578 F.2d 846 (9th Cir.1978), *cert. denied* 439 U.S. 1048, 99 S.Ct. 724, 58 L.Ed.2d 707 (1978); *Turpin v. Mailet,* 579 F.2d 152 (2nd Cir.1978) (en banc), *vacated and remanded sub nom City of Westhaven v. Turpin,* 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978).

the standards of liability under § 1983 are not necessarily applicable to constitutional claims in a *Bivens*-type action, we are reluctant to extend the scope of municipal liability in the face of the Supreme Court's clear pronouncement in *Monell* and in the absence of affirmative action by Congress to impose *respondeat superior* liability on municipalities in either context. (Footnotes omitted.)

We conclude, therefore, that a *Bivens*-type action is not available to plaintiff to hold the local governmental entities vicariously liable for acts of their employees and members of their governing bodies.

■ Plaintiff also contends that the City, County and Planning Commission are "employers" as defined in Title VII and therefore can be held primarily liable. We agree with plaintiff that the broad definition of employer found in Title VII would arguably include these defendants and that summary judgment must be denied as to the Title VII claim.

■ ■ However, this is not the same standard to be applied to claims under §§ 1981, 1983 and 1985. The actions by defendant Claussen, as the city commissioner serving on the Planning Commission, or defendant Taylor, as county commissioner serving on the Planning Commission, insofar as the actions involved plaintiff, cannot be found to be the actions of the City and County. *Fracaro v. Priddy*, 514 F.Supp. 191 (M.D. N.C.1981). Taylor and Claussen were not acting on behalf of the City or County in approving or disapproving the termination, nor is there anything in the record indicating their actions constituted a practice or policy of either the City or the County. Neither the City Commission nor County Commissioners as a whole or as individuals ever approved or ratified, or acted in any way upon plaintiff's termination. Even if these defendants were in positions where their acts could in some instances "fairly be said to represent official policy," *Monell* requires that in order to impose liability upon the local government as an entity, the actions by such officials must be in the "execution of a government policy or cus-

tom." *Monell, supra,* 436 U.S. at 694, 98 S.Ct. at 2037. The two commissioners did not have the authority to instigate plaintiff's termination or to make the ultimate decision as to her termination. Summary judgment is therefore appropriate for the defendant City and the defendant County.

■ There remains a question, however, whether Schlegel held such a position with the Planning Commission that his acts may "fairly be said to represent official policy" of that entity, and whether his action in terminating plaintiff was pursuant to a discriminatory policy or custom he had instituted. Plaintiff has alleged discrimination against other minority employees of the commission by Schlegel in her deposition. Summary judgment is therefore inappropriate as to the Planning Commission at this time.

■ Plaintiff finally argues that the theory of *respondeat superior* can be used to hold these defendants liable under § 1981 or § 1985, even if unavailable as to § 1983 claims. We do not agree. In *Davis v. Reed,* 462 F.Supp. 410 (W.D.Okl.1977), the court stated:

The doctrine of *respondeat superior* has no application in civil rights suits. *Draeger v. Grand Central, Inc.,* 504 F.2d 142 (10th Cir.1974); *Weiss v. J.C. Penney Co.,* 414 F.Supp. 52 (N.D.Ill.1976); *Barrows v. Faulkner,* 327 F.Supp. 1190 (N.D.Okl.1971). Thus, in order to be held personally liable under 42 U.S.C. § 1981, the defendants would have to be directly and personally involved in a deprivation of plaintiff's equal employment rights.

In *Atkins v. National Kidney Foundation,* No. 80–4241 (D.Kan., *unpublished,* 6/30/82) (J. Saffels), the court held that under § 1981 a defendant must be shown to have been directly involved in a deprivation of plaintiff's civil rights. [Citing *Lessman v. McCormick,* 591 F.2d 605, 612 (10th Cir.1979); *Draeger, supra,* and *Davis v. Reed, supra.*] The same policy should apply to claims under § 1985. We hold that the entity defendants may not be held

vicariously liable under plaintiff's claims based on §§ 1981, 1983 or 1985.

As no claims have been stated against the defendants City and County under these statutes, they are entitled to summary judgment and dismissal from all but the Title VII cause of action. Plaintiff's claims against officials of the City and County in their official capacities must also fail. Official capacity suits have been held by the Supreme Court to be duplicitous of suits directly against the entity. *Monell, supra.*

## II. The Motion for Summary Judgment of Defendant James H. Schlegel, II.

Defendant Schlegel contends in his motion for summary judgment that plaintiff has not succeeded in demonstrating a *prima facie* case of racial discrimination because she has produced no evidence of a racially discriminatory motive on his part. Schlegel was the person directly responsible for plaintiff's hiring, working conditions, and termination. His contacts with plaintiff were numerous and significant, more than any other defendant. With respect to plaintiff's claims of discriminatory hiring and promotion, the question of the qualifications of her predecessor as Planner III, is both disputed and quite material. On the record before us, we cannot say as a matter of law that plaintiff's predecessor was more or less qualified than plaintiff for the job; nor can we say beyond a reasonable doubt that plaintiff's problems encountered in the working conditions in the planning department were not caused in part by racially motivated decisions by Schlegel. We note that plaintiff has specifically refuted several of the items cited by Schlegel in his notice of termination. Given the sharp conflict between plaintiff's and Schlegel's version of events during plaintiff's tenure in office, the court cannot say beyond a reasonable doubt that judgment as a matter of law should be entered for defendant Schlegel. Consequently, his motion for summary judgment will be overruled. Since the Planning Commission remains in the suit at this time, plaintiff's claims against Schlegel in both his individual and official capacities will stand.

## III. The Motion to Dismiss or for Summary Judgment of Defendant Jim Claussen.

Defendant Claussen has also filed a motion for summary judgment. Claussen is an elected city commissioner for the City of Topeka, and holds the office of Finance Commissioner. He was appointed to the Topeka-Shawnee County Metropolitan Planning Commission as the City Commission representative in December of 1979 and in February of 1980 was appointed temporary supervisor of the Personnel Department. Claussen was contacted by plaintiff in April of 1980 regarding her overdue performance evaluation. In response to the communication from the plaintiff, Claussen sent a written directive to Schlegel, plaintiff's supervisor, asking him to complete the performance evaluation as soon as possible. Also in April of 1980, Nancy Leiker, Chairperson of the Planning Commission, contacted Claussen regarding plaintiff's employment situation, and Commissioner Claussen suggested that plaintiff contact him. Thereupon, plaintiff did get in touch with him, and Claussen asked plaintiff to send her request for a meeting in writing, which plaintiff did. Plaintiff's personnel matters were then added to the agenda for the Planning Commission meeting scheduled for May 1, 1980. Notice of that meeting was sent out April 25, 1980. Following the notice, the City Attorney, defendant Turner, visited Claussen and Commissioner Leiker and advised each of them against the scheduled discussion of plaintiff's job problems because of her pending complaints with the Kansas Commission on Civil Rights. Subsequently, Claussen met again with Chairperson Leiker and they agreed that they should delete plaintiff's personnel matters from the agenda and plaintiff was so notified by written memorandum dated April 29, 1980. The May 1, 1980 Commission meeting proceeded without discussion of plaintiff's particular situation.

On May 2, defendant Schlegel sent the notice of plaintiff's proposed termination to

Claussen as required by city ordinances and regulations. Claussen met with Schlegel and Turner in his office on May 2, 1980. When asked by Claussen about the requirement of Claussen's signature on the notice of termination, Turner advised Claussen not to do anything. Claussen neither approved nor disapproved the notice of termination. Under the regulations of the City, if approval or disapproval of the appropriate commissioner is not received within thirty days, the termination is deemed approved. Plaintiff claims that Claussen discriminated against her in not insuring that she receive her overdue evaluation in April of 1980 and in not investigating or disapproving her termination.

First, defendant Claussen argues that plaintiff's § 1985 conspiracy allegations fail to state a claim against him. Plaintiff contends that Claussen's meetings with Turner and Schlegel and his action in failing to disapprove her notice of termination were sufficient overt acts to present a jury question on the conspiracy claims. While we agree with the individual defendants that the § 1985 conspiracy claims appear exceedingly tenuous, we, in an abundance of caution, will refrain from granting summary judgment on them at this time.

Defendant Claussen further contends that plaintiff has failed to produce any evidence of racial motivation in his actions toward her to support her claims under § 1981. The court is not in a position at the summary judgment stage to weigh inferences. Although we find plaintiff's allegations against Claussen extremely weak, we cannot say that plaintiff's proffered inference of racially motivated actions is "laughable" [Steele v. Bunten, No. 77–2033 (10th Cir., unpublished, 11/20/78) ]. We are therefore unable to sustain Claussen's motion regarding the § 1981 claims.

Defendant Claussen further contends that plaintiff's § 1983 claims must be dismissed because she has shown no evidence that she was deprived of a federally protected right by him. We cannot accept defendant's contention that racial discrimination in employment does not constitute deprivation of a federally protected right. However, we agree with Claussen that plaintiff has in no way produced any facts tending to establish an agency relationship among the individual defendants. The 1983 claims by plaintiff will stand against Claussen only as to alleged deprivation of federal rights personally participated in by him. The "affirmative link" requirement of Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), for imposition of § 1983 liability cannot be avoided by usage of terms such as "agency" and by simply avoiding the use of the phrase "respondeat superior." Defendant Claussen's motion for summary judgment on plaintiff's § 1983 claims will be sustained as to any claims based on an "agency" relationship.

Finally, Claussen contends that plaintiff's Title VII claims must fail for lack of evidence of a racially discriminatory intent on his part in any of the actions he took. The question of discriminatory intent is one that is peculiarly unsuited for disposition prior to trial. We will deny his motion regarding the Title VII claims at this time.

Defendant Claussen has come extremely close to establishing good faith immunity as a matter of law. After hearing the evidence at trial we will be in a better position to consider another motion to dismiss. At this time, however, Claussen's motion for summary judgment is denied except with respect to plaintiff's § 1983 claims based upon an alleged agency relationship between Claussen and one or more of the other defendants, and except, of course, any claim against Claussen in his official capacity.

IV. The Motion to Dismiss or for Summary Judgment of Defendant Dennis Taylor.

Defendant Taylor has moved for summary judgment as to plaintiff's § 1981, § 1985 and Title VII claims. Taylor was elected to the Shawnee County Commission on January 1, 1979, and served as the county commission representative to the Topeka-Shawnee County Metropolitan Planning Commis-

sion during the calendar year 1979. During his time as county commission representative to the planning commission, he had no contact with plaintiff concerning her employment situation. In calendar year 1980, Taylor was alternate representative from the county commission to the planning commission. On May 2, 1980, the regular county commission representative to the planning commission was unavailable, and Taylor, as alternate commission representative, received the notice of plaintiff's termination from Schlegel. Taylor's failure to disapprove plaintiff's termination is the only action of Taylor's that plaintiff complains was discriminatory. We cannot agree with plaintiff that we should "assume" there were other duties that Taylor failed to perform regarding plaintiff's employment situation. Plaintiff, of course, contends that the meeting on May 2, 1980, wherein the notice of proposed termination was delivered by Schlegel to Taylor and Claussen, is evidence of the conspiracy between these defendants. Taylor argues that plaintiff's § 1981 claims must fail because there is no evidence of discriminatory purpose on his part and that he is entitled to a ruling that he acted in good faith as a matter of law. There is no question that his involvement in the pertinent events is minimal at best. Taylor cannot be held liable for any actions in which he did not personally participate. Plaintiff has made no showing of any agency relationship among the defendants and it is clear that *respondeat superior* is not available to enlarge the scope of liability. Consequently, Taylor may only be charged, if at all, with his own action in not disapproving plaintiff's termination by Schlegel.

In *Himmelbrand v. Harrison,* 484 F.Supp. 803, 811 (W.D.Va.1980), the court held that "an individual defendant's mere failure to prevent unlawful conduct—despite his knowledge of it and despite his probable ability to prevent it—is not sufficient personal involvement to warrant § 1983 liability. *Kohler v. Hirst,* 460 F.Supp. 412 (E.D.Va.1978). *See Rizzo v. Good,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)." As in *Himmelbrand,*

plaintiff here has not alleged that defendant Taylor affirmatively recommended and participated in Schlegel's decision to terminate plaintiff; she avers merely that Taylor knew of the proposed termination and failed to prevent the alleged unlawful termination. In *Kohler v. Hirst,* cited in *Himmelbrand,* the court held that plaintiff had not alleged sufficient conduct by the defendants to impose liability where the plaintiff merely asserted that the defendant board members "knew of her firing, were in a position to prevent it, but failed to do so. This type of conduct, even if true, does not subject the board members to liability under 42 U.S.C. § 1983. More direct personal action is required." *Id.* at 421. We agree with Taylor that his action in not approving or disapproving plaintiff's termination is insufficient to impose liability under § 1983 or § 1981. Summary judgment on these claims is therefore appropriate.

Taylor also requests this court to grant summary judgment on plaintiff's Title VII claims as there has been no evidence of disparate treatment. We agree, as plaintiff has alleged no facts that could lead to an inference of disparate treatment. Defendant Taylor's motion is therefore granted as to plaintiff's claims under §§ 1981, 1983, and Title VII.

### V. The Motion for Summary Judgment of Defendant Dan Turner.

Defendant Dan E. Turner is the Topeka City Attorney and occupied that position during plaintiff's employment with the planning commission. Like Taylor, Turner had minimal contact with the plaintiff and her employment situation at the planning commission. Turner did meet with plaintiff during early April 1980 regarding a dispute with Schlegel over an oral reprimand. At the meeting, Turner advised plaintiff to submit in writing her own version of the incident to her supervisor, Schlegel. Later in April, when Turner became aware that the plaintiff's employment situation was an item on the agenda for a commission meeting scheduled for

May 2, 1980, Turner met individually with Claussen and commissioner Leiker and advised them against such a discussion. The two commissioners subsequently agreed to withdraw the item from the agenda. Plaintiff has alleged that Turner participated in a meeting with Taylor and Claussen and possibly Schlegel on May 2, 1980, when Schlegel provided Taylor and Claussen copies of the notice of plaintiff's termination.

The § 1985 conspiracy claim against Turner is based on the fact that he participated in the May 2 meeting. Although Turner denies having participated in any meeting regarding plaintiff's termination, we note that Claussen's affidavit submitted in support of his motion for summary judgment, at paragraph 13 states that:

> Mr. Schlegel and Mr. Turner were both in my office on or about May 2, 1980. Since the memo from Mr. Schlegel (Exhibit F) appeared to request my signature, I asked Mr. Turner for his advice. Mr. Turner advised me not to do anything with the letter and I therefore just placed it in my file.

There is obviously a dispute over who participated and to what extent in the May 2 meeting. Plaintiff, in her deposition, was woefully uninformed as to Turner's participation in events concerning her termination. She argues, however, that her deposition contained a catchall that she knew something else happened: "I just can't remember what it is. I'm just blank." (Plaintiff's Deposition at p. 453.) Plaintiff maintains that her deposition testimony was not exhaustive of her knowledge of Turner's activities. She offers nothing to suggest that she knows anything else or that in fact such knowledge will be forthcoming. We are left then with the following as Turner's total involvement: the meeting with plaintiff to discuss the oral reprimand in which he advised her to submit her version of the incident to Schlegel, his advice to commissioners Claussen and Leiker to drop plaintiff's complaint from the agenda of the May 2 commission meeting, and his advice to commissioner Claussen and possibly commissioner Taylor not to approve or disapprove plaintiff's termination.

Plaintiff has alleged no duty or obligation imposed by ordinance or custom, policy and practice that would have required Turner to do anything other than what he did. Plaintiff contacted the City Attorney's office in April of 1980 and requested a meeting, which request was granted. The commissioners themselves, Taylor and Claussen, made the decision not to approve or disapprove plaintiff's termination. Similarly, commissioners Claussen and Leiker made the decision to remove plaintiff's employment situation from the May 2 commissioners' meeting agenda, not Turner. Plaintiff argues that Turner advised strongly against the inclusion of plaintiff's topic on the May 2 agenda solely to protect the city's position with regard to plaintiff's civil rights complaints filed with the KCCR. Turner was the city's attorney and he certainly had the right and the duty to protect his client's interests to the best of his ability. In short, we have found nothing in the depositions or affidavits filed in this case that would indicate that Turner in any way personally deprived plaintiff of any rights with regard to her employment, or failed in any obligation toward plaintiff. Plaintiff has failed to assert any facts that show Turner acted other than in good faith. At best, her allegations of racial discrimination and bad faith on the part of Turner are conclusory. As Judge Brown stated in the case of *Rice v. City of Wichita*, No. 78-4280 (D.Kan., *unpublished*, 10/29/79),

> It is instructive to bear in mind that 'good faith' in the context of qualified immunity has a very specific reference to the defendant's state of mind concerning whether he reasonably believes that his acts are lawful; it does not refer to positive or friendly feelings towards the plaintiff. Likewise, bad faith is shown by a decision to act outside of one's lawful authority, not by personal dislike for, or discourteous treatment of, the plaintiff.

> At p. 11.

Plaintiff also complains that Turner, although aware of the proposed termination, made no attempt to ask plaintiff if the 57 points presented by Schlegel in support of her proposed termination were true or untrue. However, plaintiff has made no attempt to show that there was any duty on Turner, as counsel for the city, to do so. She has alleged no facts which suggest that non-minority employees were treated differently in termination proceedings by the City Attorney. The Court of Appeals in *Taylor v. Nichols*, 558 F.2d 561, 567 (10th Cir.1977), stated:

> The plaintiff was also required to go beyond conclusory allegations in order to demonstrate that the commissioners had acted in a manner which disqualified them from claiming protection of the immunity.... In *Scheuer* [*Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)] the Supreme Court recognized the qualified immunity available to officers in the executive branch of government saying that it varied depending upon the discretion of the officers and their responsibilities.... *Scheuer* does not rule out determination of the existence of immunity on summary judgment.... In *Oakley* [*Oakley v. City of Pasadena*, 535 F.2d 503 (9th Cir.1976)] as in the case at bar there is a failure on the part of the plaintiff at the summary judgment stage to assert facts which created a factual issue as to the presence of good faith on the part of the defendants.

The court concludes that summary judgment is appropriate on the § 1981, § 1983, and Title VII claims and judgment will therefore be entered in favor of defendant Dan Turner. As with the other individual defendants, summary judgment will be denied at this time on the § 1985 conspiracy claims.

*Conclusion.*

The motions of the defendants City of Topeka and Shawnee County are granted as to plaintiff's claims based on §§ 1981, 1983 and 1985. Claims under Title VII will remain. All claims against defendants Claussen, Taylor and Turner in their official capacity are dismissed. The motion of the Topeka-Shawnee County Metropolitan Planning Commission is denied. Defendant Schlegel's motion is denied except as to any claims based on an agency relationship with other defendants. The motion of defendant Claussen is denied at this time except for any claims based upon agency relationship with other defendants and any claims against him in his official capacity. The motions of defendants Taylor and Turner are granted as to all claims except those arising under 42 U.S.C. § 1985.

IT IS SO ORDERED.