Paul LUCERO and Margaret Piro, now known as Margaret Runkle, Plaintiffs,

v.

BETH ISRAEL HOSPITAL AND GERIATRIC CENTER, Defendant.

Civ. A. No. 78–HC–704.

United States District Court, D. Colorado.

Oct. 26, 1979.

Barbara A. Stark, Denver, Colo., for plaintiffs.

William C. McClearn and Richard W. Comfort, Jr., of Holland & Hart, Denver, Colo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

CHILSON, Senior District Judge.

### Preliminary Statement

This action came on for trial to the Court without a jury on October 15, 1979.

This is a civil rights action brought pursuant to 42 U.S.C. § 2000e *et seq.* and § 1981 whereby the plaintiffs seek to recover compensatory and punitive damages for racial discrimination, and attorney fees and costs. The Court has heard the evidence and the argument of counsel, has considered the briefs, and makes the following Findings of Fact.

### FINDINGS OF FACT

The plaintiffs are employees of the defendant. The complaint alleges two claims for relief; one, racial discrimination in the amount of compensation paid to them for their services and the other, based on harassment because of their race. The claims are limited to the period from November 1972 to April 1974.

At the opening of the trial, the Court dismissed the first claim upon motion of the plaintiffs and the trial proceeded on the claim of racial harassment.

The plaintiff, Paul Lucero (Lucero) is a Spanish surnamed person. The plaintiff, Margaret Piro, now known as Margaret Runkle, (Runkle) is an Anglo.

Prior to November 1972 and at all times since, the plaintiffs were and are employed as respiratory therapists by defendant, a non-profit corporation engaged in the operation of a hospital.

The plaintiffs' evidence, with respect to the charges of racial discrimination, is not controverted. The defendant's liability for the racial discrimination which the Court finds existed is a controverted issue.

The Court finds that in November 1972, one Myrtis Williams, a black person, was employed by defendant as the Director of the Respiratory Therapy Department of the hospital, which position she held until April 1974 when she was replaced.

■ ˙ Early in her tenure as Director, Williams deliberately embarked upon a policy of discrimination in favor of black persons and against non-black persons in the hiring of employees and in the treatment accorded to non-black employees.

The undisputed testimony of the plaintiff and Marion Lewis Revels, (a black person) Assistant Director of the Department under Director, Williams, leaves no doubt that Williams aided and abetted by Sarah Rainey, a black, Martha Rollins, a black, a Peggy Tanio, a white who was married to a black who was employed in the Department, engaged in a continuous harassment of the plaintiffs and other non-black employees in the Department.

The acts of harassment consisted of almost continuous criticism of the work of the plaintiffs and other non-blacks, abusive racial slurs and comments and other abusive conduct directed at the plaintiffs and other non-black employees.

This conduct resulted in almost daily confrontations between non-black employees, including the plaintiffs on the one hand and Williams, Rainey, Rollins, and Tanio on the other hand. These confrontations usually occurred at daily report meetings attended by the employees of the Department.

The complaints of non-blacks to Williams with regard to this discriminatory conduct were ignored by Williams or met with the responses to the effect that "If you don't like it here, get another job." The numerous complaints of non-blacks made to Assistant Director, Revels, were reported by her to her superior, Williams, but Williams took no action nor did Williams report these complaints to her superior, Dr. Beckwitt, or the Administrator of the hospital, Mr. Yaffe.

Upon the foregoing controverted evidence, the Court finds that Director, Williams, intentionally, deliberately, wilfully, wantonly, and continuously engaged in racial discrimination against plaintiffs and other non-black employees of the Department from November 1972 to on or about April 1974.

In January 1974, the plaintiffs filed with the EEOC their complaints of racial discrimination.

Thereafter, and at some time prior to April 8, 1974, Dr. Beckwitt, the Medical Director of the Respiratory Therapy Department of the hospital, expressed to Williams his dissatisfaction with the operation of the Respiratory Therapy Department, expressing concern with the lack of leadership, the number of absences of employees, the poor morale of the Department, and that the Department was not operating as it should. Dr. Beckwitt also expressed to Williams his suggestions for improvements and thereupon Williams resigned her position in April 1974.

After Williams' resignation, there is no evidence of any further racial discrimination within the Department of Respiratory Therapy.

The Court finds that during the period in question, Dr. Beckwitt was the Medical Director of the Department of Respiratory Therapy, but devoted only part of his time to his duties as such. He set guidelines for the Director of the Department and delegated to the Director, the duties of operating the Department within those guidelines, including the hiring and firing of employees. Dr. Beckwitt required that all problems within the Department should be submitted to him through channels, that is to say, that complaints or problems were to be funneled through the assistant director, thence to the director, and that only the director was to refer complaints to him for his consideration. He testified that he was unaware of the racial discrimination problems within the department or the turmoil and confrontations resulting therefrom.

Mr. Yaffe also testified he was unaware of the racial discrimination problems within the department of Respiratory Therapy and that he had received no complaints about racial discrimination.

The plaintiffs on the other hand, testified that they had attempted on two or three occasions to bring the racial discrimination problem to the attention of Dr. Beckwitt and Mr. Yaffe, but were prevented from

doing so by the policy that complaints and problems should be submitted through channels and Williams' failure and refusal to submit the complaints to her superior, Dr. Beckwitt, resulted in the failure of Dr. Beckwitt and Mr. Yaffe to recognize that a serious racial problem did exist within the Department.

Although the defendant had a policy of non-discrimination, an affirmative action plan and an affirmative action officer, there is no evidence that the defendant made any attempts to monitor or investigate the operations of the Department of Respiratory Therapy to determine whether or not the hospital's policy of non-discrimination was in fact being carried out.

Even after the complaints were filed by the plaintiffs with the EEOC in January 1974, no investigations were made by the hospital administrators of the plaintiffs' charges of racial discrimination.

The plaintiffs offered no evidence on their claims for compensatory damages other than the testimony of the plaintiffs that they suffered emotional stress as a result of the racial discrimination found by the Court.

■ The Court finds that the plaintiffs suffered emotional stress and mental pain and suffering as a result of the racial discrimination, but the plaintiffs offered no evidence to explain why they waited for more than a year to file their charges of racial discrimination, thereby prolonging the period of emotional stress.

The record shows that the plaintiffs were represented by an attorney, but no evidence was offered upon which the Court can make an award of reasonable attorney fees.

### CONCLUSIONS OF LAW

The plaintiff seeks relief pursuant to 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981.

The defendant contends that under applicable law, it is not liable for the discriminatory acts of Williams.

■ The Court concludes that the law applicable to the facts found by this Court is set forth in *Miller v. Bank of America*, 600 F.2d 211 (9th Cir. 1979) as follows:

"Title VII itself, 42 U.S.C. § 2000e(b), defines 'employer' to include 'any agent of such a person' (i. e., employer). As the court said in *Flowers v. Crouch-Walker Corp.*, 7 Cir., 1977, 552 F.2d 1277, 1282: 'The defendant is liable as principal for any violation of Title VII or section 1981 by Kolkau in his authorized capacity as supervisor.' *See also Anderson v. Methodist Evangelical Hospital, Inc.*, 6 Cir., 1972, 464 F.2d 723, 725; *Calcote v. Texas Educational Foundation*, 5 Cir., 1978, 578 F.2d 95, 98; *Friend v. Leidinger*, 4 Cir., 1978, 588 F.2d 61, 69 (Butzner, J., dissenting)."

"- - - We conclude that respondeat superior does apply here, where the action complained of was that of a supervisor, authorized to hire, fire, discipline or promote, or at least to participate in or recommend such actions, even though what the supervisor is said to have done violates company policy."

■ Upon the facts found by the Court, the Court concludes that the defendant is liable for the discriminatory acts of its Director, Williams, under both 42 U.S.C. Section 2000e et seq. and Section 1981.

■ The Court concludes that plaintiff is entitled to recover from the defendant under § 1981 compensatory damages for mental pain and suffering proximately caused by the discriminatory acts of Williams, but reduced in amount by the plaintiffs' delay in taking legal action pursuant to 42 U.S.C. § 2000e et seq. or § 1981 to terminate the racial discrimination.

The Court concludes that plaintiffs under § 1981 are entitled to punitive damages in an amount which bears some reasonable relationship to the compensatory·damages awarded them.

■ The Court concludes that the plaintiffs are entitled by law to recover from defendant reasonable attorney fees, but having failed to offer any evidence to support the amount of this claim, the plaintiffs

456

are entitled to recover only a nominal amount for attorney fees.

The Court concludes that the plaintiff, Paul Lucero, is entitled to recover from the defendant compensatory damages in the amount of $500.00, punitive damages in the amount of $500.00, attorney fees in the nominal amount of $50.00, together with his taxable costs.

The Court concludes that the plaintiff, Margaret Runkle, is entitled to recover from the defendant compensatory damages in the amount of $500.00, punitive damages in the amount of $500.00, together with her taxable costs.

## ORDER

IT IS THEREFORE ORDERED that judgment be forthwith entered in favor of the plaintiff, Paul Lucero and against the defendant, Beth Israel Hospital and Geriatric Center in the amount of $1050.00, together with his taxable costs to be taxed by the Clerk of the Court upon the filing of a bill of costs within ten days from this date.

IT IS FURTHER ORDERED that judgment be forthwith entered in favor of the plaintiff Margaret Runkle, and against the defendant, Beth Israel Hospital and Geriatric Center in the amount of $1050.00, together with her taxable costs to be taxed by the Clerk of the Court upon the filing of a bill of costs within ten days from this date.

IT IS FURTHER ORDERED that all further and additional relief prayed for by the plaintiffs be and the same are hereby denied.