**Dianne M. SAYE, Plaintiff,**

v.

**ST. VRAIN VALLEY SCHOOL DIS-
TRICT and Vicki Ploussard,
Defendants.**

**Civ. A. No. 82–K–1120.**

United States District Court,
D. Colorado.

Dec. 24, 1986.

Larry F. Hobbs, William P. Bethke, Denver, Colo., for plaintiff.

Daniel Bernard, Richard Lyons, Longmont, Colo., for defendant.

MEMORANDUM OPINION
AND ORDER

KANE, District Judge.

I.

Dianne Saye brought this action under 42 U.S.C. § 1983 against Saint Vrain Valley School District and Vicki Ploussard, the principal of Frederick Elementary School in the District. Saye taught special education classes at Frederick for three years as a probationary employee. Ploussard was Saye's supervisor for the last year-and-a-half of her employment. Saye alleges her First and Fourteenth Amendment rights were violated when the district followed Ploussard's "recommendation" not to renew Saye's teaching contract because Ploussard's decision was in retaliation for Saye's exercise of her rights to free speech and association. After Saye had presented her case to the jury, I granted defendants'

motion for a directed verdict. On appeal, the decision was affirmed in part, reversed in part, and remanded for further proceedings. *Saye v. St. Vrain School District RE–IJ,* 785 F.2d 862 (10th Cir.1986).

The part of the decision which was affirmed related to Saye's First Amendment claim. I held that to the extent a particular issue raised by Saye (the "student aid time" issue) was a matter of public concern and not her own private concern, the manner in which she raised the issue was so disruptive that her speech was not constitutionally protected. I also found no merit to the claim based on Saye's union activity because she had intentionally absented herself from a special meeting to discuss certain issues (including Ploussard's performance as a principal) with a Craig Russell, who provided education association services to local associations and who coordinated and led local union activities. The Tenth Circuit reversed, however, and concluded a factual issue exists on whether Saye's constitutionally protected union activities were a motivating factor in the nonrenewal decision by the board. The Tenth Circuit remanded to me in order to send the motivating factor issue to a jury.

## II.

### DEFENDANT SCHOOL DISTRICT'S MOTION TO DISMISS

Defendant school district has submitted a motion to dismiss it from this litigation on the grounds that Saye has failed to state a claim against the school district *as an entity.* The school district's argument is based primarily upon its interpretation of two Supreme Court cases which purportedly are controlling and overrule the Tenth Circuit's ruling and assumptions in this case concerning the legal liability of a school district under 42 U.S.C. § 1983. The district argues the Supreme Court has pronounced that a district, as an entity, is not legally liable under § 1983 *despite any line of factual causation* unless it discriminates as a broad policy. Thus, the district

argues the "motivating factor" issue should not go to a jury because a school district cannot be held liable anyway. Accordingly, defendants challenge the portion of the Tenth Circuit opinion which states:

> [T]here was testimony that Superintendent Blue was told about Saye's actions as faculty representative and about the possibility that she had been subjected to harrassment and retaliation by Ploussard.... School Board members stated by deposition that they had relied completely on the recommendations of the administration [(Superintendent Blue, who relied on Ploussard's recommendation)] in voting not to renew Saye. "Where this line of causation exists, and the principal or superintendent predicated their [sic] recommendations on constitutionally impermissible reasons, these reasons become the basis of the decision by the Board members." (citations omitted) (emphasis added).

*Saye v. St. Vrain School District, supra,* at 867.

Saye argues, first of all, the "law of the case" rule ordinarily precludes a court from re-examining an issue previously decided by the same court, or a higher appellate court. *Moore v. Jas. H. Mathews & Co.,* 682 F.2d 830 (9th Cir.1982). Thus, in the interest of finality and orderly resolution of the case, Saye suggests this issue should not be re-examined since it has already been decided by the Tenth Circuit opinion under *Monell v. New York Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

I choose not to follow this reasoning simply because it "proves too much". Saye is attempting to promulgate a brand of jurisprudence by which subsequent Supreme Court decisions modifying relevant doctrines could never be applied to a case on remand. Summarily disregarding relevant Supreme Court cases, *especially* later ones modifying the legal standard to be applied in the case at hand, is contrary to established law. The motion to dismiss the district must be considered in light of *all* existing law, including, of course, later Su-

preme Court decisions addressing the legal standard in question. The controlling Supreme Court decision I shall apply in this case, *Pembaur v. City of Cincinatti*, 475 U.S. ——, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), was decided some two weeks *after* the Tenth Circuit issued its opinion in the instant case.

## A. THE SUPREME COURT DECISIONS.

The district argues the Tenth Circuit disregarded a Supreme Court decision—*City of Oklahoma v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). More importantly, the district argues the Tenth Circuit opinion in this case was written fifteen days *before* the Supreme Court decided *Pembaur v. City of Cincinnati, supra*, which purportedly states a municipality is not liable for decisions of subordinates who make unconstitutional discretionary decisions.

In *Tuttle*, the Court had to decide whether a single isolated incident of the use of excessive force by a police officer establishes an official policy or practice of a municipality, as required by the decision in *Monell v. New York City Department of Social Services, supra*, sufficient to render the municipality liable for damages under 42 U.S.C. § 1983. Although the justices were unable to agree on an opinion, defendants argue seven members of the Court agreed that a single isolated incident of the use of excessive force by a police officer *cannot* establish an official policy or practice of the municipality sufficient to render it liable for damages under § 1983.

*Tuttle*, however, does not stand for this proposition. *Tuttle* was explained in *Pembaur, supra*, in the following manner:

> Municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered.[10] The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal lia-

bility based on an exercise of that discretion. [*Tuttle*][11] (citation omitted).

*Id.* 106 S.Ct. at 1299.

In a footnote the Court explained that *Tuttle* does *not* stand for the proposition that "a policy cannot be said to be 'existing' unless similar action has been taken in the past." *Id.* at n. 11. The Court stated such a reading of *Tuttle* would be "strained". Thus, a "policy which ordered *or authorized* an unconstitutional act *can be established by a single decision by proper municipal policymakers.*" (emphasis added) *Id.*, 106 S.Ct. at 1299, n. 11.

Saye is not required, therefore, to demonstrate similar incidents in the past in order to demonstrate the actions of Vicki Ploussard and the superintendent constituted an unconstitutional policy on the part of the district. The key determination is whether "the official [is] also responsible for establishing *final government policy* respecting such activity before the municipality can be held liable.[12]" (emphasis added). *Id.*, 106 S.Ct. at 1299.

In another footnote the Court explained the constituent elements by which to determine *who* makes "final government policy".

> [F]or example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decision respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff *is* the official policymaker, *would* give rise to municipal liability. Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board. *However, if the Board delegated its*

*power to establish final employment policy to the Sheriff, the Sheriff's decisions would represent county policy and could give rise to municipal liability.* (emphasis added).

*Id.* 106 S.Ct. at 1300, n. 12.

At first glance, it would seem the district in this case cannot be held liable since the decision to fire Saye, if unconstitutional, was a discretionary recommendation on the part of Vicki Ploussard and the superintendent, and not a decision of the district. This would comport with the Supreme Court analogy of the county sheriff as explained in *Pembaur, supra,* 106 S.Ct. at 1300, n. 12.

However, if Vicki Ploussard's decisions about Saye were mere "recommendations" and it was the district that had the final decision as to whether Saye would be hired or fired, then she would not be held liable. She may have made unconstitutional recommendations but if the district *acted* upon such recommendations "only that body's decisions would provide a basis for [municipal] liability." *Id.,* 106 S.Ct. at 1300, n. 12. If the district retained all policymaking authority and delegated none to Ploussard or the superintendent, then the district, and not Ploussard, would be liable for the nonrenewal of Saye's contract.

Liability for an unconstitutional employment policy may attach either to a municipality, or to a municipality's employee who has policymaking power, or to both, but it cannot totally be denied in an endless renvoi. Therefore, I must determine, who decided the "final employment policy". If an unconstitutional firing took place, somebody is responsible for it.

## B.  THE FINAL EMPLOYMENT POLICYMAKER.

The district argues that it is the final employment policymaker but it does not want to assume responsibility for the alleged unconstitutional firing decision. It therefore argues its policy was "to merely and routinely ratify and accept the superintendent's recommendations without knowledge of any union activity." Defendant's

motion at 6. This last clause—"without knowledge of any union activity"—is exactly the factual dispute the Tenth Circuit has determined must be submitted to a jury. For this reason alone, defendant's motion to dismiss must be denied. The district would have me disregard this remand order and simply assume as fact what the Tenth Circuit states is a factual dispute because the Board members *themselves* may have had knowledge of the union activity based on the superintendent's recommendation and were motivated by such knowledge not to renew Saye's contract. Thus, *Tuttle* and *Pembaur* do not even apply to the Tenth Circuit's opinion. The Tenth Circuit recently upheld the view that "determining whether the state's action was motivated by [the state's detrimental] conduct raises a question of fact for the jury." *Wren v. Spurlock,* 798 F.2d 1313 (10th Cir.1986).

*Tuttle* and *Pembaur* deal with the issue of municipal liability where there is *no allegation* that the municipality itself, as an entity, knew or authorized the unconstitutional policy or may have been motivated by the recommendations of the individuals who made the unconstitutional decisions. Rather, these cases address situations where an employee of the municipality, but not the municipality itself, knew or authorized an unconstitutional act. The cases all hold under these circumstances, the municipality cannot be held liable under a vicarious liability or *respondeat superior* theory of liability. In *Pembaur,* the Court stated:

... [W]hile Congress never questioned its power to impose civil liability on municipalities for their *own* illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of others. (citation omitted) ... [B]ecause of these doubts, Congress chose not to create such obligations in § 1983. Recognizing that this would be the effect of a federal law of *respondeat superior,* we conclude that § 1983 [can]not be interpreted to incorporate

doctrines of vicarious liability. (citations omitted) (emphasis in original).

106 S.Ct. at 1297.

The Tenth Circuit is not attempting to invoke vicarious liability or *respondeat superior* theories. The Court of Appeals has made only the limited determination that a jury needs to decide the factual dispute of whether the district *itself* was motivated by unconstitutional considerations based on alleged unconstitutional recommendations. This is why the motion to dismiss must be denied.

Putting all considerations of *respondeat superior* aside, I still must rule on the district's interpretation of municipal liability. In its motion to dismiss as it relates to unconstitutional acts of municipal employees, the district asserts if it does not have knowledge, itself, of the unconstitutional motivations not to renew Saye's contract; it cannot be liable under any circumstance.

The district cites language quoted above in *Pembaur*, including this last sentence of footnote 12:

> However, if the board *delegated its power to establish final employment policy* to the Sheriff, the Sheriff's decisions would *represent county policy and could give rise to municipal liability.* (emphasis added).

*Id.*, 106 S.Ct. at 1300, n. 12.

The district then makes an interesting admission about its delegation of employment decisions to Ploussard and the superintendent at page 6 of its motion:

> [I]t is clear that the Board did not deliberately choose a cause of action. To the contrary, it merely and *routinely ratified and accepted the superintendent's recommendations* without knowledge of any union activity. Although it retains the authority to establish employment policy, *it has in effect delegated the day-to-day administrative employment decisions to its administrators.* (emphasis added).

The district is attempting to insulate itself from virtually all municipal liability by first having all hiring and firing decisions executed by individual administrators and principals. This way, the district claims "ignorance" whenever there is an unconstitutional firing.

To be sure, contextual language can be located in *Monell, Tuttle,* and *Pembaur* to support that proposition. When, however, the Supreme Court attempts to give full meaning to these contextual passages, e.g., "if the Board delegates its power to establish final employment policy ... [the] decisions would represent county policy and could give rise to municipal liability", *Pembaur,* 106 S.Ct. at 1300, n. 12, the district is quick to point out that "it still retains authority to establish employment policy."

Such a retention of "authority", however, is in name only. Indeed, it is mere legal fiction. As the district itself admits in an effort to demonstrate it knew absolutely nothing about the Saye employment situation: "[t]he district merely and routinely ratified and accepted the superintendent's recommendations." Defendant's motion at 6.

Such "assembly-line rubber-stamping" is not setting forth final employment policy. Rather, it is a delegation of the power to establish final employment policy to the principal, Vicki Ploussard, and the superintendent. Such conduct gives rise to municipal liability. It is ludicrous to assume employment policy is retained by a municipality when the principal and superintendent make the employment decisions and thus effectively dictate the employment policy while the district, again, to use the district's own words, "merely and routinely ratified and accepted the superintendent's recommendations".

As stated, *Tuttle* and *Pembaur* do not allow *respondeat superior* or vicarious liability theories to establish municipal liability. These cases stand for the proposition that when such final employment policy is delegated to municipal employees, their decisions represent and become the municipality's policy and as such give rise to municipal liability. *Pembaur,* 106 S.Ct. 1299, n. 12. Thus, the motion is denied.

The district argues, as a rejoinder, that "final policymaking authority is a question of state law." *Pembauer*, 106 S.Ct. at 1297. Further, Colorado law states the policymaking authority regarding employment is not, and cannot, be delegated to a principal or superintendent. Colo.Rev.Stat. § 22–32–109; *Big Sandy School District v. Carroll*, 164 Colo. 173, 433 P.2d 325 (Colo. 1967)[1]. The district attempts to use *Carroll, supra,* to prove there cannot have been such a delegation of powers.

*Carroll* correctly states the law in Colorado. It does not determine whether this district is in compliance. On the contrary, this kind of blind acceptance of employment decisions on the part of the district in the instant case is the precise conduct which the *Carroll* case declared illegal. In *Carroll*, the court stated:

> The applicable statute not only empowers the school board to employ teachers and fix their wages, but goes on to declare that such is *the duty of the school board.* C.R.S. § 123–10–19 [now § 22–32–109].[2] In other words, the power to employ teachers is exclusively vested by the legislature in the school board, and not in any other body or official. It being, then, the *duty* of the school board to employ teachers and fix their wages, the question is then raised as to whether the duty which has been thus placed by the legislature in the school board may be delegated, or on the contrary whether this is a non-delegable duty. (emphasis in original).
>
> In our view *the power to employ teachers and fix their wages is not a mere ministerial and administrative matter, where little or no judgment or discretion is involved, but on the contrary is a legislative or judicial power involving the exercise of considerable discretion.*

Hence, under the general rule, such power cannot be delegated. The power to employ teachers has been conferred by the legislature exclusively on the school board, and therefore it cannot be delegated. (emphasis added).

*Carroll,* 433 P.2d at 328.

The language of the case suggests the school board should not be able to shirk its "duty" to exercise considerable discretion. Accord, *Willis v. Widefield School District No. 3,* 43 Colo.App. 197, 603 P.2d 962 (1979). In the instant case, the district argues the final decision making authority still rests with the district, while the superintendent and principal have the mere advisory and administrative tasks of making "recommendations". This cannot be the case, however, if the district merely accepts such decisions without exercising a cognitive function. Ploussard and the superintendent's "mere recommendations", as the district likes to refer to them, are, for all intents and purposes, the actual employment decisions and ultimately the policy of the district. The *Carroll* case directly contravened such an arrangement when it stated:

> "... the power to employ teachers ... is not a mere ministerial or administrative matter, where little or no judgment or discretion is involved, but on the contrary is a legislative or judicial power *involving the exercise of considerable discretion*" (emphasis added).

*Id.,* 433 P.2d at 328.

■ Where the power of employment is in the hands of the principal and superintendent such that their decisions and actions are effectively those of the district, their actions are those of the final employment policymakers and as such their ac-

---

**1.** This case has been overruled on other grounds by *Normandy Estates Metropolitan Recreation District v. Normandy Estates, Ltd.,* 191 Colo. 292, 553 P.2d 386 (Colo.1976).

**2.** Colo.Rev.Stat. § 123–10–19 (1963) was repealed July 1, 1964. *See* 1964 Colo.Sess.Laws, 590, § 27. *See also* Colo.Rev.Stat., Vol. 18, Comparative Table (C.R.S.1963 to C.R.S.1973).

The *Carroll* case, however, is still "good law" since a similar statute, Colo.Rev.Stat. § 22–32–109, sets forth essentially the same policy considerations. Also, the case was cited by the Colorado Court of Appeals in *Willis v. Widefield School District No. 3,* 43 Colo.App. 197, 603 P.2d 962 (1979).

tions give rise to municipal liability. The formal assertions of the district that the principal and superintendent make mere "recommendations" are chimerical.

## GOOD FAITH DEFENSE

 In the alternative, the district requests I employ their created concept of a "good faith defense for a municipality as an entity." Although a good faith defense is available to an individual, it has been rejected for a municipality as an entity by the Supreme Court in *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Accordingly, a good faith defense for a school district as an entity is denied here as well.

### III.

### CONCLUSION

This motion to dismiss is denied because there is a factual dispute concerning what considerations motivated the Board itself not to renew Saye's contract which the Tenth Circuit has remanded for resolution by a jury. Thus, defendant's arguments relating to the non-liability of a municipality for the unconstitutional actions of an employee which the municipality knew nothing about nor authorized, is inapplicable.

To the extent the motion to dismiss argues a school district cannot be held liable for the actions of its principal, Vicki Ploussard, or the superintendent, the motion is denied. Where there was an effective delegation of power to make final employment policy to the principal and superintendent, Colorado law notwithstanding, their decisions constitute the district's final employment policy and as such give rise to municipal liability under 42 U.S.C. § 1983. Finally, a good faith defense is not available for a municipality as an entity.

IT IS THEREFORE ORDERED THAT:

Defendant's motion to dismiss is denied in all respects.