Dr. Margaret YOUNG, Plaintiff,

v.

SEDGWICK COUNTY, KANSAS, et al., Defendants.

Civ. A. No. 86–1179–T.

United States District Court, D. Kansas.

May 27, 1987.

Fred W. Phelps, Elizabeth M. Phelps, Phelps-Chartered, Topeka, Kan., for Dr. Margaret Young.

Edward L. Keeley, Crockett, Keeley & Gilhousen, Wichita, Kan., for Sedgwick County, Kan., Sedgwick County Bd. of County Com'rs and Timothy Witsman.

Michael R. Meacham, Wichita, Kan., for Michael R. Brand, Jeffrey D. Loane, Mary Ann Mamoth, and Joseph Cotton.

## OPINION AND ORDER

THEIS, District Judge.

This is an action by a former employee of Sedgwick County, Kansas, against seven defendants for alleged employment discrimination under Title VII, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., 42 U.S.C. § 1983, and 42 U.S.C. § 1981. Dr. Margaret Young claims that she was discriminated against on the basis of sex, race and age, that she was retaliated against for complaining of such discrimination, and that her First Amendment rights were violated. The defendants deny Young's contentions and assert that her employment was terminated because of poor work performance. The case is presently before the Court on Sedgwick County's motion for summary judgment, Forest Tim Witsman's motion for summary judgment, the Sedgwick County Board of Commissioners' motion for summary judgment, Mary Ann Mammoth's and Joseph Cotton's motion for summary judgment, and Michael R. Brand's and Jeffery D. Loane's motion for partial summary judgment.

Plaintiff has moved for an order requiring the defendants to file a complete copy of the entire discovery record with the Clerk of the Court. Neither Rule 56 of the Federal Rules of Civil Procedure nor Rule 15(c) of the Rules of Practice of the United States District Court for the District of Kansas require that all discovery be filed any time a motion for summary judgment is filed. *Mason v. Twenty-Sixth Judicial District of Kansas*, No. 86–2103–S (D.Kan., *unpublished*, April 9, 1987). Local Rule 15(c) requires only that pertinent portions of the record which form the basis for the summary judgment motion accompany the motion as appendices or exhibits. Plaintiff's motion requesting all discovery to be filed shall be denied.

The Court is familiar with the standards governing consideration of motions for summary judgment. Summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue of fact is "material" only when the dispute is over facts that might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Thus, the mere existence of some alleged

factual dispute between the parties will not defeat an otherwise properly substantiated motion for summary judgment. *Id.* A party resisting a motion for summary judgment must do more than advance conclusory allegations; it must set forth specific facts showing that there is a genuine issue for trial. *Dart Industries, Inc. v. Plunkett Co.*, 704 F.2d 496, 498 (10th Cir.1983). The court must consider the record in the light most favorable to the non-moving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). If the only issue remaining is one of law, summary judgment is appropriate. *Union Pacific Land Resources Corp. v. Moench Investment Co., Ltd.*, 696 F.2d 88, 93 (10th Cir.1982), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1776, 76 L.Ed.2d 348 (1983).

## I. FOREST TIM WITSMAN

The following facts are uncontroverted. Forest Tim Witsman was the County Administrator during the period of Young's employment. At the time of Young's termination, Witsman duties included overseeing seven county bureaus which contained twenty-nine county departments, one of which was the Community Corrections Department where Young worked. Witsman was responsible for approximately 1,250 county employees.

Young was employed as an evaluator in the Community Corrections Department from September 8, 1983, to November 15, 1985. From the date of her hiring until February of 1985, Young's immediate supervisor was defendant Michael Brand, who was the Assistant Director of Community Corrections during that period. In February of 1985, Brand became the Director of the Department. In April of 1985, defendant Jeffery Loane was hired as Assistant Director. Loane was Young's immediate supervisor until her termination.

Although Sedgwick County Resolution No. 119–1985, adopted April 17, 1985, by the County Commission, gave the County Administrator the ultimate authority to employ, evaluate, discipline and terminate employees within the twenty-nine departments

for which he was responsible, of necessity Witsman relied on bureau chiefs and department heads to discipline and terminate employees within their own departments. Witsman intervened only if he had information to believe the action taken was improper. Witsman signed the Personnel Resolution form documenting the end of Young's employment.

Witsman did not know Young. He was never Young's supervisor during her employment. Young never complained to Witsman about discrimination. Shortly after Young's termination, Witsman believes that Brand advised him that Brand had terminated Young for poor work performance. Witsman asked whether Brand had sufficient documentation and reason for terminating Young, to which Brand replied that he did. Witsman did not participate in the drafting of the letter by Brand informing Young of her termination, nor did he see it prior to this action. Brand did not advise Witsman of any allegations by Young of discrimination or improper conduct. Witsman does not remember anyone ever advising him that Young had made such charges.

The plaintiff alleges that Senator Norma Daniels presented Young's resume to Witsman at a gathering of local legislators in December of 1985, and that Witsman then shook his head from side to side. Witsman responds that although he talked to Senator Daniels, he never discussed Young with Senator Daniels. Witsman states that if he shook his head while talking to Senator Daniels, it was not in response to any statement concerning Young.

### A. § 1983 and § 1981

■ Young contends that Witsman is liable under 42 U.S.C. § 1983 because he possessed final authority with respect to Young's termination and because he approved and ratified her termination. Both sides acknowledge that Witsman may not be held liable vicariously for the alleged constitutional violations of his subordinates. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In

*Mclelland v. Facteau,* 610 F.2d 693, 697 (10th Cir.1979), the Tenth Circuit held that "when the defendant is in a position of responsibility, knew or should have known of the misconduct, and yet failed to act to prevent future harm, liability accrues under § 1983."

Young refers to this Court's opinion in *Wulf v. City of Wichita,* 644 F.Supp. 1211, 1226 (D.Kan.1986), in which this Court found the defendant city manager to be liable under § 1983:

> Wulf has established the personal liability of defendant Gene Denton. Denton testified that in his position as City Manager he was the final adjudicator of Wulf's rights. Denton ratified LaMunyon's decision to fire Wulf three times. From his initial knowledge of Wulf's termination to his final ratification of that termination, Denton chose not to require meaningful fact-finding. Even though he had been apprised of the allegations in Wulf's letter to the Attorney General.... Denton not only acquiesced in, he directly ratified, LaMunyon's unconstitutional actions.

Contrary to Young's reading of the case, *Wulf* does not stand for the proposition that ratification of allegedly unconstitutional actions, without more, is sufficient to incur liability under § 1983. In *Wulf* the city manager had been apprised of the allegations that the police chief's actions were unconstitutional, and was involved at three separate junctures in Wulf's termination.

In the instant case, Witsman apparently had delegated the final authority to terminate employees to the department heads. His role in Young's termination was confined to signing the Personnel Resolution form documenting the end of her employment. When Brand advised Witsman that he was terminating Young for poor work performance, Witsman properly inquired whether there was sufficient cause and documentation for her termination. Young makes no supportable allegations that Witsman was or should have been aware of her complaints of discrimination. Knowing that someone will be fired and being in a position to prevent that firing, without knowing that the potential firing is in any way improper, is insufficient to impose liability under § 1983. *Howard v. Topeka-Shawnee County Metropolitan Planning Commission,* 578 F.Supp. 534, 541 (D.Kan.1983). Young makes some conclusory allegations with respect to whether Senator Daniels gave plaintiff's resume to Witsman. Even assuming all that Young represented in her deposition is true—that Senator Daniels was holding Young's resume when she spoke with Witsman, and that during the course of the conversation Witsman shook his head—this is insufficient to raise a material factual question as to Witsman's liability under § 1983, given that Young admitted she could not hear the conversation, and given Witsman's affidavit testimony that he and Senator Daniels did not discuss Young. The Court shall grant Witsman's motion for summary judgment with respect to Young's § 1983 claim. Young's § 1981 claim must be dismissed, since she has failed to establish even a factual question regarding whether Witsman participated in her termination with the requisite discriminatory intent. *Firefighters Local Union No. 1784 v. Stotts,* 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984); *Howard,* 578 F.Supp. at 538, 541.

**B. Title VII**

Young has alleged disparate treatment on the basis of sex, race and retaliation under Title VII, 42 U.S.C. § 2000e. Under this statute, Young must establish a prima facie case that the defendant's actions were discriminatory. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). While there is no evidence in the record to link Witsman with any discriminatory conduct, plaintiff appears to argue that Witsman is liable in his official capacity under a respondeat superior theory.

Courts have consistently applied strict liability to employers for a supervisor's acts of racial, ethnic and religious discrimination. *Calcote v. Texas Education Foundation,* 578 F.2d 95 (5th Cir. 1978); *Cariddi v. Kansas City Chiefs*

*Football Club, Inc.,* 568 F.2d 87 (8th Cir. 1977); *Flowers v. Crouch-Walker Corp.,* 552 F.2d 1277, 1282 (7th Cir.1977); *Young v. Southwestern Savings & Loan Association,* 509 F.2d 140, 144 n. 7 (5th Cir.1975); *Lucero v. Beth Israel Hospital & Geriatric Center,* 479 F.Supp. 452 (D.Colo.1979); *United States v. City of Buffalo,* 457 F.Supp. 612, 635 (W.D.N.Y.1978); *Compston v. Bordon, Inc.,* 424 F.Supp. 157, 160 (S.D.Ohio 1976); *see also* 110 Cong.Rec. 5820, 8177 (1964). While the scope of respondeat superior liability under Title VII in the context of sexual harassment cases is assessed according to principles of agency law, *Meritor Savings Bank, FSB v. Vinson,* — U.S. —, —, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986), there are distinctions between these forms of discrimination. *See* Cerutti, *Differing Standards of Employer Liability for Sexual Harassment of Working Women,* 27 Ariz.L.Rev. 155 (1985); Note, *Employment Discrimination—Defining An Employer's Liability Under Title VII for On-the-Job Sexual Harassment: Adoption of a Bifurcated Standard,* 62 N.C.L.Rev. 795 (1984). Since respondeat superior liability under Title VII applies to supervisory employees who are the agents of employers (and therefore employers themselves for purposes of 42 U.S.C. § 2000e(b)), *Owens v. Rush,* 636 F.2d 283 (10th Cir.1980), this Court cannot grant Witsman summary judgment on Young's Title VII claim.

■ Witsman next contends that the failure to name him in the EEOC charge requires dismissal of the Title VII claim against him. The Tenth Circuit has held that the omission of a party's name from the EEOC charge does not automatically require the dismissal of a Title VII action. *Romero v. Union Pacific Railroad,* 615 F.2d 1303 (10th Cir.1983). The *Romero* court listed four factors for courts to balance in determining whether the failure to name a party in the EEOC charge requires his dismissal:

1) [W]hether the role of the unnamed party could through reasonable efforts by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 1312. Young submits that since Witsman had at least nominal authority to decide terminations, the substance of the charge regarding plaintiff's allegedly unlawful termination and the naming of the Board of Commissioners, whose interests are similar to Witsman's, necessarily put Witsman on sufficient notice. Witsman argues only that Young could have ascertained Witsman's role prior to the filing of the charge. Witsman fails to explain how he was prejudiced. Balancing these factors, the Court finds that the notice rationale of the EEOC charge was served, and that the failure to name Witsman in the charge does not warrant his dismissal. The Court shall deny Witsman's motion for summary judgment with respect to Young's Title VII claim.

### C. Age Discrimination in Employment Act

■ To establishing a prima facie case under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34, a plaintiff must establish intentional discrimination. *Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir.1979). As the Court explained above, there is no evidence that Witsman intentionally discriminated against Young. Therefore, the only way Young could establish Witsman's liability under the ADEA is on a theory of respondeat superior.

Witsman argues that he is not liable under the ADEA because he does not come within the ADEA's definition of "employer." While the definition of "employer" under Title VII is stated as "a person engaged in an industry affecting commerce

who has fifteen or more employees ... and any agent of such a person," 42 U.S.C. § 2000e(b), the ADEA's definition of "employer" is somewhat different:

The term "employer" means a person engaged in an industry affecting commerce who has twenty or more employees.... The term also means (1) any agent of such a person, and (2) a State or political subdivision of a State, and any interstate agency, but such term does not include the United States, or a corporation wholly owned by the Government of the United States.

29 U.S.C. § 630(b). Witsman argues that the definition of employer in § 630(b) includes persons engaged in an industry affecting commerce and any agent of such persons, and a state or political subdivision of a state. Witsman contends that an agent of a political subdivision is not an "employer" for purposes of the ADEA. Young responds that complimentary provisions of the ADEA and Title VII should be construed consistently, *see Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), and since the definition of "employer" under Title VII has been interpreted to include agents of political subdivisions, *Owens v. Rush,* 636 F.2d 283 (10th Cir.1980), the ADEA's definition of "employer" should be similarly construed.

The first step in construing a statute is to look to the language of the statute and ascribe to it the plain meaning of the terms. *Colautti v. Franklin,* 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979). Section 630(b) clearly provides three distinct definitions of the term "employer" for purposes of the ADEA: 1) a person engaged in an industry affecting commerce who has twenty or more employees, or 2) any agent of such a person, or 3) a state or political subdivision of a state and any agency or instrumentality of a state or political subdivision of a state. *See EEOC v. Hudson Township,* 40 F.E.P. Cases 691, 692–93 (N.D.Ohio 1986). The definition of "employer" under the ADEA quite clearly does not include any agent *of* an agency or instrumentality of a state or political subdivision of a state. This Court agrees with

the reasoning of Judge Saffels in *Ditch v. Board of County Commissioners of the County of Shawnee,* 650 F.Supp. 1245, 1251 (D.Kan.1986):

[T]his court finds a compelling reason for releasing the individual defendants from liability under the ADEA. Title VII's definition of employer includes a person engaged in an industry affecting commerce *and any agent of such a person.* 42 U.S.C. § 2000e(b). Title VII's definition of person includes political subdivisions. *Id.* at § 2000e(a). Therefore, it is no great revelation to hold that agents of political subdivisions, such as the county commissioners in this case, can be held personally liable as employers under the statute. In fact, such a holding makes perfect sense and is mandated by the language of the statute. However, to find no distinction between the Title VII and the ADEA definitions of employer simply because of the policy behind the statutes borders on judicial activism in its plainest sense. In enacting the ADEA, Congress explicitly excluded states and their political subdivisions from the definition of person, opting rather to include them as a separate and distinct category of employer. Within one sentence, Congress established the separate and distinct liability of (1) agents of persons and (2) states and political subdivisions. Congress made no provision for agents of states and political subdivisions. It would have only required the insertion of the short phrase "and their agents" in 29 U.S.C. § 630(b)(2) to express Congress' intent to hold individuals such as these defendants liable for age discrimination. If ever the maxim *expressio unius est exclusio alterius* is applicable, it is this situation. This court cannot invalidate the express terms of a federal statute under the guide of applying a policy of liberal construction, regardless of the ultimate ends that would be furthered.

*See also McCroan v. Bailey,* 543 F.Supp. 1201, 1211 (S.D.Ga.1982). Since Witsman is not an "employer" under the ADEA, the

Court shall grant Witsman's motion for summary judgment on the ADEA claim.

## II. BOARD OF COUNTY COMMIS-SIONERS

The following material facts are uncontroverted. In 1981, the Board of County Commissioners of Sedgwick County, Kansas ("the Board") adopted a Personnel Policy and Procedures Manual which sets forth Sedgwick County's policy that employment decisions will be made without discrimination on the basis of race, sex, age or other impermissible factors. On April 17, 1985, the Board adopted a resolution which provided for the reorganization of certain non-elective county offices and the administration of the personnel therein. As part of that reorganization, the Board delegated to the County Administrator the authority to employ, evaluate, discipline and terminate employees in the Community Corrections Department. Young did not complain of discrimination to any of the county commissioners.

The Board contends that Young has failed to state a claim for relief against it under any of her theories, since the Board had an anti-discrimination policy, the Board delegated termination decisions to the County Administrator, and the Board was never informed by Young of her discrimination complaints. Plaintiff cites extensively to *Saye v. St. Vrain Valley School District*, 650 F.Supp. 716 (D.Colo.1986), in which the court held that the decisions and actions of a principal and a superintendent to whom there was an effective delegation of power to make final employment policy were the actions of the school district, notwithstanding a Colorado statute which placed the final decision making authority with the school board. The court in *Saye* apparently feared an "endless renvoi," *id.* at 719, in which one entity possessed the titular power to terminate employees, another entity actually exercised that power, and both denied liability on the grounds that they lacked, respectively, the responsibility and the authority for the firing decision.

The present situation is not akin to that in *Saye*. In this case, it is undisputed that the actual authority to terminate Young was delegated by the Board to the County Administrator, Witsman, who delegated the authority and responsibility for employment decisions to his department heads, in this case, defendant Brand. (While the defendants argue that none of the present defendants can be considered *final* employment policymakers because Young had the ability to grieve her termination to the Sedgwick County Grievance Board, the availability of a grievance mechanism does not insulate the decisionmakers from liability. *Praprotnick v. City of St. Louis*, 798 F.2d 1168 (8th Cir.1986) (existence of an appeal process does not divest the policymakers of authority, nor does it insulate them from liability).) Plaintiff apparently fears that unless she establishes liability on the part of the Board, the municipality will not be liable. On the contrary, if Brand possessed and improperly exercised policymaking power on behalf of the municipality, his actions would give rise municipal liability under § 1983. *Wulf*, 644 F.Supp. at 1226. With respect to the liability of the Board, since the Board had no involvement in Young's termination, no responsibility for her termination, and no knowledge of her complaints, summary judgment on behalf of the Board is warranted.

## III. SEDGWICK COUNTY

### A. Municipal Liability Under § 1983

Sedgwick County, Kansas ("the County"), submits that Young has failed to state a claim against it under § 1983 because a municipality can only be liable for actions taken pursuant to official municipal policy, and the County policy, as expressed in its Personnel and Procedures Manual, was one prohibiting discrimination. The existence of a written municipal policy against discrimination cannot insulate a municipality from liability. *Anela v. City of Wildwood*, 790 F.2d 1063 (3rd Cir.1986); *Brandon v. Allen*, 645 F.Supp. 1261 (W.D. Tenn.1986). Indeed, the actual practices of officials often constitute the official policy of a municipality, while an ordinance, regulation or manual may be routinely ignored:

It would be a narrow conception of jurisprudence to confine the notion of 'laws' to what is found written on the statute books.... Settled state practice ... can establish what is state law.... Deeply embedded traditional ways of carrying out state policy ... are often tougher and truer law than the dead words of the written text.

*Monell v. New York City Department of Social Services,* 436 U.S. 658, 691 n. 56, 98 S.Ct. 2018, 2036, n. 56, 56 L.Ed.2d 611 (1978). As explained above, if a wrong results from a practice that is attributable to a municipal policymaker, the municipality may be liable under § 1983. Thus, Young has stated a claim for relief against Sedgwick County.

## B. Preclusion of Civil Rights Claims by Title VII

The County argues that Young's discrimination claims under § 1981 and § 1983 are so intertwined with her Title VII claim as to be unidentifiable as discrete claims. Essentially, the County is contending that the availability of a discrimination remedy under Title VII precludes resort to the Civil Rights Act. A number of federal district courts have held that suits under § 1983 are barred when the same cause of action is available under Title VII. *See, e.g., Keller v. Prince George's County Department of Social Services,* 616 F.Supp. 540 (D.Md.1985); *Tafoya v. Adams,* 612 F.Supp. 1097 (D.Colo.1985); *Torres v. Wisconsin Department of Health and Social Services,* 592 F.Supp. 922 (E.D.Wis.1984).

These preemption or exclusivity decisions refer to the Supreme Court's decision in *Great American Savings & Loan Association v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). The question before the *Novotny* Court was whether rights *created by* Title VII could be asserted within the remedial framework of § 1985. *Id.* at 377, 99 S.Ct. at 2351–52. The Court held that such a § 1985 action would circumvent the comprehensive remedial scheme provided by Title VII. *Id.* at 375–76, 99 S.Ct. at 2350–2351. Therefore, the Court concluded that "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Id.* at 378, 99 S.Ct. at 2352.

Three judges in this district have addressed whether claims under the Civil Rights Acts are preempted by Title VII. In *Jensen v. Board of County Commissioners for Sedgwick County,* 636 F.Supp. 293, 298 (D.Kan.1986), Judge Kelly held that claims under the Civil Rights Act which are based on independent constitutional rights predating Title VII may be brought along with Title VII claims:

The courts which have relied on *Novotny* to dismiss § 1983 claims where constitutional violations were alleged have misapplied that case. *Novotny* does not apply to constitutional claims.... The plaintiff in *Novotny* sought redress for his employer's retaliation for opposing conduct made unlawful under Title VII. Therefore, the right was created by title VII; it did not exist prior to the enactment of that statute. Accordingly, *Novotny* does not hold that § 1983 claims based on constitutional rights which predate Title VII are precluded.

Judge Saffels reached precisely the same result in *Mason v. Twenty-Sixth Judicial District of Kansas,* No. 86–2103–S (D.Kan., *unpublished,* April 8, 1987), holding that Title VII is not the exclusive remedy for constitutional rights which predate Title VII. On the other hand, in *Goodall v. Sedgwick County,* No. 82–1914 (D.Kan., *unpublished,* October 11, 1985), Judge Crow dismissed the plaintiff's § 1983 claims for sex discrimination and sexual harassment, holding that she had not articulated a harm independent of that remediable under her Title VII claim.

This Court agrees with the reasoning employed and results reached by Judges Kelly and Saffels. Court should look to the source of the rights allegedly violated, rather than the nature of the harm allegedly suffered, to ascertain whether a cause of action under § 1983 may be precluded by a comprehensive remedial scheme. *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Middlesex County Sewerage Authority v. National Sea Clammers Associ-*

*ation*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). In addition, *Novotny* cannot be read to preclude a § 1983 cause of action for conduct which violates both Title VII and rights derived from another source: the Constitution or a federal statute. Importantly, Congress has twice specifically rejected amendments to Title VII which would have made Title VII the exclusive remedy for unlawful employment practices. H.R.Rep. No. 92–238, *reprinted in* 1972 U.S.Code Cong. & Ad.News 2137, 2154; 110 Cong.Rec. 13650–13652 (1964). In the face of this clear message from Congress, the theoretical underpinning of the preemption theory—that the comprehensive Title VII framework demonstrates implicit congressional intent to repeal the § 1983 cause of action for concurrent constitutional violations—is without foundation.

■ At a minimum, a § 1983 claim may be brought in tandem with a Title VII claim based on the same operative facts if the § 1983 claim is premised on an independent constitutional basis. Young's claims of race and sex discrimination are proscribed by constitutional guarantees independent of Title VII. This Court agrees with Judge Kelly that there are enough differences in procedures, remedies and standards between Title VII and the Civil Rights Acts to make it advantageous for an employee to bring an action under both theories. *See Jensen*, 636 F.Supp. at 296. Moreover, this Court notes that the extension of the *Novotny* rationale regarding § 1985 suits to § 1983 actions may not be a ready transition. *See Huebschen v. Department of Health and Social Services*, 547 F.Supp. 1168 (W.D.Wis.1982), *rev'd on other grounds*, 716 F.2d 1167 (7th Cir. 1983). In addition, the Court questions whether the Title VII remedial scheme is sufficiently comprehensive to work an implied repeal of § 1983. *See Wright v. City of Roanoke Redevelopment and Housing Authority*, —— U.S. ——, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) (remedial devices of the Housing Act are not sufficiently comprehensive to foreclose § 1983 cause of action); *Victorian v. Miller*, 813 F.2d 718 (5th Cir.1987) (Food Stamp Act's remedial

mechanism's are not sufficiently comprehensive to raise inference that Congress intended to preclude § 1983 action to enforce compliance with the Act). *See also* Levit, *Preemption of Section 1983 by Title VII: An Unwarranted Deprivation of Remedies*, 15 Hofstra L.Rev. —— (winter 1987). However, because the Court reaches the result that plaintiff's § 1983 claims are not precluded since they stem from independent constitutional sources, and because the parties have not briefed the issue of comprehensiveness, this Court leaves for another day the question of whether a plaintiff may sue under § 1983 when the sole basis for the § 1983 claim is a violation of Title VII. *See Johnson v. Ballard*, 644 F.Supp. 333, 337 (N.D.Ga.1986).

■ The Tenth Circuit has not decided the particular question under consideration in this case. A recent opinion of the Tenth Circuit, though—in which the court declined to reach the broader issue of § 1983 preemption by Title VII—may shed some light on the Court of Appeals' view of the matter. In *Tafoya v. Adams*, 816 F.2d 555 (10th Cir.1987), the Tenth Circuit ruled that the plaintiff's complaint adequately set forth a Title VII claim based on retaliatory discharge, but failed to allege a race discrimination claim under § 1981. The court ruled that the plaintiff's Title VII claim of retaliatory discharge could not form the sole basis for a § 1983 cause of action. While the complaint in the present case is somewhat confusing, Young's retaliation claim apparently is not that she was terminated in retaliation for filing her EEOC complaint. Her termination on November 15, 1985, predated the filing of her EEOC charge on December 24, 1985. Dk. no. 1, pp. 1, 3. Thus, unlike the plaintiff's allegation in *Tafoya* that he was fired in retaliation for filing a discrimination charge, Young apparently claims that her retaliatory discharge—for complaining about discriminatory practices—was motivated in part by race discrimination. Thus, since § 1981 provides the basis for Young's claim of retaliatory discharge, the County's preemption analysis is inapplicable to Young's retaliation claim. *Tafoya*, at 558

n. 4; *Irby v. Sullivan,* 737 F.2d 1418, 1429–30 (5th Cir.1984).

## IV. MARY ANN MAMMOTH & JOSEPH COTTON

The following additional uncontroverted facts are relevant to Mary Ann Mammoth's and Joseph Cotton's motion for summary judgment. Mammoth is the director of the Sedgwick County Personnel Department. Cotton is the assistant director of the Sedgwick County Personnel Department. Neither Mammoth nor Cotton had authority to or responsibility for evaluating Young's work performance. As personnel director, Mammoth was responsible for advising the director of Community Corrections on matters of personnel policy. As assistant personnel director, Cotton was responsible for advising the director of Community Corrections on matters of personnel procedure. Young met with Mammoth and Cotton on October 7, 1985, to express her concerns regarding the Department of Community Corrections, including perceived sexual and racial discrimination and complaints by supervisors about her work performance. Mammoth informed defendant Brand of Young's complaints.

On October 9, 1985, Brand requested that the personnel department issue a thirty day Notice of Concern to Young, which was issued by Mammoth and Cotton on October 14, 1985. The parties dispute whether the issuance of the Notice of Concern is discretionary or nondiscretionary as to the personnel department. On October 21, 1985, Mammoth and Cotton were invited to join a meeting called by Brand. Mammoth and Cotton had no prior knowledge that the meeting was to take place and no prior knowledge concerning the subject matter of the meeting. At the October 21, 1985, meeting, Brand, Loane, Mammoth and Cotton discussed with Young her complaints of discrimination. Thereafter, Brand decided to terminate Young, informed Mammoth of his decision, and terminated Young's employment on November 15, 1985.

### A. Conspiracy Allegations

Mammoth and Cotton have moved for summary judgment on Young's conspiracy claim. While courts must use caution regarding the dismissal of conspiracy allegations in civil rights cases, *Fisher v. Shamburg,* 624 F.2d 156 (10th Cir.1980), conclusory allegations of conspiracy without references to specific material facts cannot survive a motion for summary judgment. *Slotnick v. Staviskey,* 560 F.2d 31 (1st Cir.1977). In this case, Young has presented no facts to establish that Mammoth's and Cotton's meetings with Young and issuance of the Notice of Concern were anything but innocuous. An awareness by Mammoth and Cotton of Young's complaints of discrimination does not render any action taken by Mammoth and Cotton with respect to Young automatically suspect. As in *Clulow v. Oklahoma,* 700 F.2d 1291 (10th Cir.1983), the record in the instant case is simply devoid of any allegations of facts indicating a conspiratorial agreement or actions in furtherance of a conspiracy on the parts of defendants Mammoth and Cotton. Therefore, the Court shall grant Mammoth's and Cotton's motion for summary judgment on Young's conspiracy claims.

### B. Good Faith Immunity

Mammoth and Cotton have moved for summary judgment on Young's civil rights claims on the basis of good faith immunity. Under the test advanced in *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), government officials performing discretionary functions "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The legal issue is whether the conduct complained of violated a law that was clearly established when the conduct complained of occurred. *Miller v. City of Mission, Kansas,* 705 F.2d 368, 375 n. 6 (10th Cir. 1983).

These defendants contend that there is no evidence in the record that their conduct

violated any established constitutional or statutory rights of the plaintiff. The Court agrees with Young that the issue of *Harlow* good faith immunity is targeted toward whether the law in question was clearly established. *Polson v. Randles*, No. 83–1313 (D.Kan., *unpublished*, February 11, 1985). While Mammoth and Cotton are not citing the correct legal predicate, essentially they are arguing that there are no facts in the record to impose liability on them under the civil rights statutes. The Court agrees. There are no supportable allegations that Mammoth or Cotton intentionally discriminated or participated in discrimination against Young. *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984). While defense counsel fails to clearly argue the point, it is apparent that the same analysis applies to Young's Title VII claims against Mammoth and Cotton. Therefore, the Court shall grant Mammoth and Cotton summary judgment on Young's civil rights and Title VII claims.

### C. Age Discrimination in Employment Act

■ Mammoth and Cotton request summary judgment on Young's ADEA claims for the same reason argued by defendant Witsman: that, as agents of an agency of a political subdivision, they are not "employers" within the meaning of the ADEA. The Court shall grant Mammoth's and Cotton's motion for summary judgment on Young's ADEA claims for the reasons explained above in I.C.

### V. MICHAEL R. BRAND & JEFFERY LOANE

■ Michael R. Brand and Jeffery Loane have filed a motion for partial summary judgment on Young's ADEA claims for the same reasons presented by defendants Mammoth, Cotton and Witsman. The Court finds that since Brand and Loane are agents of an agency of a political subdivision, they are not "employers" within the meaning of the ADEA. *See supra* I.C. Therefore, the Court shall grant Brand's and Loane's motion for partial summary

judgment with respect to Young's ADEA claims.

IT IS THEREFORE ORDERED that Witsman's motion for summary judgment is hereby granted with respect to Young's § 1981, § 1983 and ADEA claims. Witsman's motion for summary judgment is denied with respect to Young's Title VII claim.

IT IS FURTHER ORDERED that the Board of County Commissioners' motion for summary judgment is hereby granted.

IT IS FURTHER ORDERED that Sedgwick County's motion for summary judgment is hereby denied.

IT IS FURTHER ORDERED that Mammoth's and Cotton's motion for summary judgment is hereby granted.

IT IS FURTHER ORDERED that Brand's and Loane's motion for partial summary judgment with respect to Young's ADEA claim is hereby granted.